ALPHONSO WETMORE, PLAINTIFF IN ERROR v. THE UNITED STATES.

A paymaster in the army of the United States, appointed under the act of congress passed the 24th of April 1816, is entitled to the pay and emoluments of a major of infantry, and not those of a major of cavalry.

The army registers, published by the adjutant and inspector-general of the army, containing the general regulations of the army, which are delivered by the departments to the officers of the army, are not evidence to establish the pay and emoluments of officers in the service. These are fixed and determined by acts of congress.

The registers are compilations issued and published to the army by the direction of the secretary at war, in the exercise of his official authority; and when authenticated by him, would be evidence of the facts, strictly so, they may contain; such as the names of officers, date of commissions, promotions, resignations, and regimental rank, brevet and other rank, or the department of the army to which officers belong: but from none of these can an inference be drawn by a jury to establish the pay and emoluments of officers; as they are provided for by law, and must be determined by the court when they are doubtful, and the subject of dispute in a suit between an officer and the United States. Nor can such registers be evidence of the correctness of any classification of the officers of departments into a general staff of the army: for though they are probably correct, being prepared by persons whose professional duty it is to be well informed upon the subject, and who, from their familiarity with military science and the general arrangement of armies, are supposed to be expert interpreters of the acts of congress for the organization of our army; still, what officers are of the staff, or general staff, depends upon acts of congress, which are to be expounded by the courts, when an officer claims a judicial determination of his rights as to pay and emoluments from his having been arranged as belonging to the staff.

IN error from the district court of the United States for the district of Missouri.

An action of indebitatus assumpsit was instituted at September term 1832, by the United States, in the district court of the United States for the Missouri district, against Alphonso Wetmore, upon an account regularly adjusted, settled and certified at the treasury of the United States on the 18th of November 1831. The account charged the defendant with the sum of 3388 dollars and 18 cents, "for difference of pay and forage, between a major of cavalry and a major of infantry, improperly received by him, and now brought to his debit." At the foot of the account there is a statement by the second auditor of the treasury, as follows: " the same being the difference of pay and forage claimed by him, between a major of cavalry and

a major of infantry, to which he is considered as not entitled by the accounting officers of the treasury of the United States."

The cause was tried by a jury on the 6th of September 1832, and a verdict was found for the United States.

The United States produced and read in evidence, the duly certified transcript from the treasury showing the amount of the claim against the defendant.

It was admitted on the trial, that the defendant had served as a paymaster (duly appointed as such) in the army of the United States, from the said 24th day of April 1816 to the said 31st day of May 1831 ; and that the amount stated in said account and transcript to be due from the defendant to the United States consists solely of the difference between the pay and emoluments allowed by the accounting officers to the defendant, and the pay and emoluments retained and claimed by him during the period of service aforesaid.

The defendant claimed to be allowed for his service during the period aforesaid, the pay and emoluments allowed, by law, to other officers of the general staff of the army of the rank of major ; and who are entitled to the pay and emoluments of majors of cavalry.

He offered in evidence an army register, prepared and published by the adjutant and inspector-general of the United States in 1816, which register was delivered to the defendant, and other officers of the army ; in the register the officers of the pay department, created by the act of congress of the 24th of April 1816, are arranged as belonging to the general staff of the army ; which evidence was, on motion of the plaintiffs, rejected by the court, to which opinion of the court, the defendant, by his counsel, excepted.

The defendant also offered in evidence the register of the army of the United States for the year 1831, prepared, published and subscribed by the adjutant-general ; in which register the officers of the pay department are arranged under the head, and as appertaining to the general staff of the army ; which evidence, as offered, was rejected by the court, and the defendant, by his counsel, excepted to the said decision rejecting said testimony. The defendant then offered to read to the jury a general order, dated, " head quarters of the army, adjutant-general's office, Washington, 11th of June 1832 ;" order No. 50, signed by the adjutant-general ; and purporting to have been issued by command of major-general Alexander Macomb, commander-in-chief ; which order prescribes the dress of

the officers, non-commissioned officers, musicians, and privates of the army, and other regulations of the government of the army; and contains, among other things, the following, to wit: " the general staff is to include the adjutant-general, the inspectors-general, the aids-de-camp, the officers of the quartermasters' department, the officers of the subsistence department, the officers of the pay depart- ment, the officers of the medical department, the commissary-general of purchases." To the reading which general order, the plaintiffs, by their counsel, objected; and the court sustained the objection, and rejected the evidence so offered: to which opinion of the court, the defendant, by his counsel, excepts. No further evidence being offered, the defendant moved the court to instruct the jury as follows :

1. That the defendant is entitled to the pay and emoluments allowed by law to the officers of the general staff of the army, of the rank of major; that is to say, the pay and emoluments allowed to majors of light dragoons, by the act of congress of the 12th of April 1808.

2. That if the jury find from the evidence that the defendant was, from the 24th of April 1816, to the time of the statement of the account read in evidence, an officer in the general staff of the army, he is entitled, for the time he has so served, to the pay and emolu- ments allowed by law to the officers of the general staff of the rank of major.

Which instructions were by the court refused; and the court in- structed the jury that the defendant, in virtue of his office, was enti- tled only to receive the pay and emoluments of a major of infantry : to which opinions of the court in refusing the instructions prayed for by the defendant, and also to the instructions given ; the defendant, by his counsel, excepted. The court sealed a bill of exceptions.

The district court gave judgment on the verdict in favour of the United States; and the defendant prosecuted this writ of error.

The case was argued by Mr Jones, for the plaintiff in error ; and by Mr Butler, attorney-general, for the United States.

" It was agreed that the following documents, facts and circum- stances, omitted in the statement contained in the bill of exceptions, shall be supplied by consent, and considered on the argument and decision of this writ of error as part of the case, in like manner as if

[Wetmore v. The United States.]

they had been annexed to and stated in said bill of exceptions, and had formed part of the original record, to wit:

"1. That the two army registers referred to in the bill of exceptions, as printed and published by order of the secretary of war, in the years 1816 and 1831, be annexed to this case and considered as part thereof, and of the record: and it is admitted that such registers were prepared, and were issued and published to the army, by the direction of the secretary of war, in the exercise of his authority as such secretary.

"2. That the general order, No. 50, of the 11th of June 1832, referred to in said bill of exceptions, be in like manner annexed to this case and considered as part thereof, and of the record: and it is admitted to be an authentic general order, such as it purports to be, and was regularly published and issued to the army.

"3. That the 'General Regulations for the Army,' printed and published by the war department in the year 1825, be in like manner annexed to this case, and considered as part thereof, and of the record: and it is admitted that the same are the regulations established by the president of the United States for the government of the army, and were published as such by his authority.

"4. That the custom and usage of the army has always been to class the officers of the pay department among the officers of the general staff of the army.

"5. That since the act of the 24th of April 1816 (6 Laws U. S. 79), for the organization of the general staff, &c., it has been the invariable usage and practice of the treasury department, and of the proper accounting officers, to allow the pay and emoluments of majors of cavalry to the assistant adjutants-general, to the assistant inspectors-general, to the deputy quartermasters-general, and to the topographical engineers; and since the act of the 2d of March 1824 (6 Laws U. S. 553), to majors on ordnance duty, and to the quartermasters."

Mr Justice WAYNE delivered the opinion of the Court.

This is a writ of error from the district court of the United States for the district of Missouri, to have a judgment reversed, which was rendered for the United States, against the plaintiff in error.

It was admitted on the trial, that the defendant had served as paymaster of the army, duly appointed as such, from the 24th April 1816, to the 31st May 1831. That the amount claimed from him

by the United States was the difference between the pay and emoluments allowed by the accounting officers of the treasury to the defendant, and the amount claimed and retained by him during the period of his service. The defendant had retained the pay and emoluments allowed by law to officers of the general staff of the army, of the rank of major. Upon the trial, the defendant offered as evidence two army registers; one published by the adjutant and inspector-general of the army in August 1816, the other published in 1831, which had been delivered to himself and other officers of the army. In both, the officers of the pay department are arranged as belonging to or appertaining to the general staff of the army. He also offered as evidence a general order, issued by the major-general commanding in chief, dated at head quarters of the army, adjutant-general's office, Washington, the 11th June 1832; which directs, that the general staff is to include the officers of the pay department. These registers, and the general order, the court refused to allow to be read as evidence to the jury; and no further evidence being offered by the defendant, he moved the court to instruct the jury :

1st. That the defendant is entitled to the pay and emoluments allowed by law to the officers of the general staff of the army, of the rank of major; that is to say, the pay and emoluments allowed to majors of light dragoons by the act of congress of the 12th April 1808.

2d. That if the jury find, from the evidence, that the defendant was, from the 24th April 1816 to the time of the statement of the account read in evidence, an officer in the general staff of the army; he is entitled, for the time he has served, to the pay and emoluments allowed by law to the officers of the general staff of the rank of major.

The court refused to give the instructions; and instructed the jury that the defendant, in virtue of his office, was entitled only to receive the pay and emoluments of a major of infantry.

These registers, however, and the general order of the major-general, with the general regulations of the army printed and published by the war department in the year 1825, have, since the writ of error was sued out, been admitted, by the consent of the attorney-general, to be a part of the original record, as if they had been referred to and stated in the bill of exceptions, and had been proved on the trial. And it is further admitted by the attorney-general and the defendant's counsel, that the custom and usage of the army have always been, to class the officers of the pay department among the officers of the general staff of the army; and that since the act of

the 24th April 1816, for the organization of the general staff, &c., it has been the invariable usage and practice of the treasury department, and of the proper accounting officers, to allow the pay and emoluments of a major of cavalry to the assistant adjutants-general, to the assistant inspectors-general, to the deputy quartermasters-general, and to the topographical engineers; and since the act of the 2d March 1821, to majors on ordnance duty, and to the quartermasters.

It is but proper, however, to remark, that the court did right in rejecting the registers and general order, when the defendant offered them as evidence on the trial. The registers are compilations issued and published to the army by the direction of the secretary at war, in the exercise of his official authority; and when authenticated by him, would be evidence of the facts, strictly so, they may contain ; such as the names of officers, date of commissions, promotions, resignations, and regimental rank, brevet and other rank, or the department of the army to which officers belong : but from none of these can an inference be drawn by a jury to establish the pay and emoluments of officers; as they are provided for by law, and must be determined by the court when they are doubtful, and the subject of dispute in a suit between an officer and the United States. Nor can such registers be evidence of the correctness of any classification of the officers of departments into a general staff of the army: for though they are probably correct, being prepared by persons whose professional duty it is to be well informed upon the subject, and who, from their familiarity with military science and the general arrangement of armies, are supposed to be expert interpreters of the acts of congress for the organization of our army; still, what officers are of the staff, or general staff, depends upon acts of congress, which are to be expounded by the courts, when an officer claims a judicial determination of his rights as to pay and emoluments, from his having been arranged as belonging to the staff.

However, we are not now called on to say what officers make up the general staff, or what departments of the army may be assigned to it, or are comprehended in it by the acts of congress; nor is it necessary for the decision of this case, to deny that paymasters may not be arranged as of the staff, under the act of the 2d March 1821. Considering the staff as a central point of military operations, whence should proceed all general orders for the army, the orders of detail, of instruction, of movement, all general measures for subsisting,

[Wetmore v. The United States.]

paying and clothing the army; and as the administrative organ of all supplies for the military service and land defence of the country: it seems to us, that paymasters, from their duties and responsibilities, should be classed with the general staff; and we presume it has been done under the act of the 2d March 1821, which, without being express upon the point, has rendered indeterminate the previous acts of congress fixing with certainty the officers composing the staff. Conceding, then, for the purposes of this argument, that paymasters are of the staff; does it strengthen the claim of the defendant to the pay and emoluments of a major of cavalry?

The position taken in favour of cavalry pay is, that paymasters, being of the general staff, are entitled, by the third section of the act of the 24th April 1816, to the pay and emoluments allowed by law to the officers of the general staff of the rank of major. The third section declares, "that regimental and battalion paymasters shall receive the pay and emoluments of majors," without the additional words of cavalry or infantry. The ninth section of the same act secures to the several officers of the staff the privileges, pay and emoluments of the act of the 3d March 1813. By the third section of that act, the assistant adjutants-general, assistant inspectors-general, deputy quartermasters-general, and assistant topographical engineers, are declared to have the brevet rank and the pay and emoluments of a major of cavalry. These are the officers of the staff, upon an equality with whom, in regard to pay and emoluments, it is contended that paymasters are placed by the act of the 24th April 1816. The question depends entirely upon the construction of the acts of congress. Having examined them, we are of opinion, that congress meant, by the words "the pay and emoluments of major," those of a major of infantry.

It was urged, however, in the argument, against this conclusion, that congress, in referring to the pay of major to fix that of paymasters, when there are different amounts of pay allowed to majors, according to the nature of the service, had reference to those whose duties are most analogous to that of paymasters, and who belong to the same branch of service. That paymasters belong to the staff of the army; and all officers of the staff who receive the pay of major, are allowed cavalry pay. That there was a strong analogy between deputy quartermasters and paymasters, both being of the staff and disbursing officers, which raised a fair and strong presumption that

congress intended paymasters should receive the same pay and emoluments as deputy quartermasters, or majors of the staff.

Upon these suggestions of analogy, we remark; it will not be pretended, before the act of 1816 was passed, that any relation existed between paymasters and the officers of the staff receiving the pay of a major of cavalry, to enable the former to have their pay graduated by that standard. In all the acts of congress, providing for the appointment of paymasters, whether they were regimental or district paymasters, or whether they were to be selected from the line of the army, or from citizens not of the army; the pay was fixed in reference to the duties and responsibilities of the appointment, without reference to any connexion of paymasters with the staff, and without regard to any analogy of duty between paymasters and any officer of the staff. In truth, the only analogy existing between paymasters and any officer of the staff, is that to deputy quartermasters; both being disbursing officers. The want of general analogy, then, shows that congress could not have been influenced in fixing the pay of paymasters by any such consideration; and the particular analogy between them and a single class of officers, in a single point, is insufficient to sustain such a presumption. Besides, the act relied upon to establish the equality contended for, makes a difference between paymasters and the officers of the staff, in regard to rank; enough of itself to account for the larger pay and emoluments allowed to the latter. They have the brevet rank of majors of cavalry, which is not given to paymasters; and to the latter the law allows no rank. The language of the act of 1813, referred to in the ninth section of the act of 1816, is, that the assistant adjutants-general, assistant inspectors-general, deputy quartermasters-general, and topographical engineers, shall have the "brevet rank," and the pay and emoluments of a major of cavalry. The section of the act of 1816, fixing the pay of paymasters, omits the words " brevet rank." As well might it be contended that they should have it, as that the words *of cavalry* should be added to the word *major.* One would do no more violence to rules for the construction of statutes than the other; but both would be in harmony with the principle applied in this instance, to give the paymasters cavalry pay. Rank of itself, in every service, is a good ground for a distinction in pay: and though it has not been followed, or has rather been abandoned in ours, in favour of the brevet rank of officers in the line and staff, it should be presumed to apply to persons having rank, and those

who have none. Cavalry pay, then, having been claimed on the ground of equal grade in the staff, the fact being otherwise; nothing is left to sustain the claim.

But it will be asked, by what considerations is it determined that the pay and emoluments of paymasters are those of a major of infantry? We answer : first, that all the previous legislation of congress, from the earliest period of the government, and its practice, give a rule which should be decisive of this question. The acts, from 1792 to the 2d March 1821, (the last upon the subject) show that congress, in determining at different times, the pay of paymasters, have always fixed it with reference to the pay of an officer in the line, with such additional compensation as was deemed to be a remuneration for increased duty and responsibility; whether the selection was to be made from subalterns of the army, or from citizens ; and when the latter, where there was a deviation, it has been by giving a fixed monthly compensation. This uniformity of practice certainly outweighs any presumption that can be raised from the ninth section of the act of 1816, that there was to be a sudden change of it in favour of staff pay : especially so, when the ninth section can only be received as providing for a certain officer, officially designated in the act of 1813, and entirely independent of the third section of the act of 1816, which had already fixed the pay of paymasters. It would be very difficult to connect the two sections, the third and ninth, in any way, to bear upon each other ; and the mistake in doing it has arisen from going out of the statute, and engrafting upon the intention of congress the exterior consideration that paymasters had been arranged under the general staff.

Again, when the acts speak of *regimental* and *battalion* paymasters, these laws must necessarily refer to the existing composition of the army, whether it be made up of all, or one, of the different arms of defence ; and cannot, without great violence, be supposed to mean one of them not comprehended in the existing military establishments of the country. So also, when the law speaks of a *major*, the term is most naturally considered as having been used in reference to such officers of that rank, and of such regiments actually being of the army, or to the army as it exists; and when it is used without regimental designation, implies a major of infantry ; this arm of defence having been made the main body of modern armies. We think military men must so understand it; because, in this, as in all other cases where distinct parts form the minor portion, the larger

or main body is understood without particular designation, and the minor requires it, to ascertain with certainty what part is referred to as spoken of. So that where the ninth section of the act of the 2d of March 1821, declares that there shall be fourteen paymasters, with the pay and emoluments of *regimental* paymasters; and when to ascertain what the pay and emoluments are, we have to resort to the third section of the act of 1816, and there find it to be those of a major: the law must mean a *regimental and not a staff major*, a major of infantry. Certainly it should not be tortured to mean a major of one of the arms of defence or kinds of regiment, of which there is none in the army. When the act of 1816 was passed, cavalry did not form a part of the army; consequently no such rank as major of cavalry existed, by which the pay of paymasters could have been graduated. But it was urged in argument, that there was such a thing as the pay of a major of cavalry, subsisting in legal contemplation. There was; but for no other purpose than as giving the standard of pay to certain staff officers. It is not probable that congress, when fixing the pay of paymasters, referred to what only existed in contemplation of law; in preference to what existed in fact, to guide its determination.

But another, and the only remaining consideration to which we shall allude, as decisive of the interpretation here given to the third section of the act of 1816, is the contemporaneous exposition and practice under it, by the accounting officers of the treasury, and acted upon by congress, when five years afterwards it re-organized the pay department of the army. The ninth section of the act of the 2d of March 1821, to reduce and fix the military peace establishment, declares that there shall be one paymaster-general, with the present compensation, and fourteen paymasters with the pay, &c. of regimental paymasters. This act, in reference to the paymaster-general, is positive in continuing the existing compensation; and the term regimental, applied to the paymaster, is to be taken in the sense in which it is used in the act fixing the peace establishment, or to the kinds of regiment of which the army was to be composed; and as continuing the paymasters upon the footing they actually were, and had been for five years, in regard to pay and emoluments. Congress knew what these were, and cannot be supposed to have intended to re-enact the law of 1816, with the construction of it here contended for; in opposition to the practice of the treasury department under it.

Judgment affirmed.