### EMIL HOENCKE V. ANNIE THOMPSON LOMAX.

#### Decided April 10, 1909.

**1.—Limitation—Adverse Possession.**

One can acquire title to the land of another by limitation notwithstanding the fact that at the time he takes possession he believes the land to be public land and intends to acquire it from the State. If he actually holds and claims the land against all the world except the State his possession is adverse and, if continued for the length of time required by the statute, will ripen into title.

**2.—Same.**

Where the possessor went into possession believing that the land was vacant public land, but his adverse possession continued for more than ten years after he discovered that it was not public land but was patented to heirs of the original grantee, the question whether his possession before such discovery was such as would ripen into title, did not arise.

**3.—Same—Coverture—Disability—Married Woman.**

Where the holder of the record title was born in 1860, and was married in 1888, and adverse possession of the land began prior to her marriage, her coverture did not affect the running of the statute.

**4.—Trespass to Try Title—Outstanding Title.**

Where, in trespass to try title, the plaintiff's vendor was shown to have acquired title by limitation, and he conveyed the entire survey to plaintiff by deed, the mere testimony of such vendor, given in explanation of tax receipts, that he had sold a part of the land, was insufficient to show any outstanding title to the land.

**5.—Limitation—Five Years—Ten Years.**

Undisputed facts held to show title under both the five and ten years' statutes of limitation.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Stevens & Pickett,* for appellant.

*Jacob C. Baldwin,* for appellee.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by appellee against appellant and other defendants to recover a tract of 210 acres of land situated in Liberty County and patented to the heirs of John Hartgraves. Plaintiff pleaded title under the five and ten years' statutes of limitation. The defendant

Hoencke answered by general demurrer and plea of not guilty, and specially pleaded the coverture and minority of his vendors in answer to plaintiff's pleas of limitation. The other defendants failed to answer and judgment was rendered against them by default. The cause between plaintiff and defendant Hoencke was tried without a jury and judgment was rendered in favor of plaintiff.

The evidence shows that appellant has a complete chain of title to the land from the heirs of John Hartgraves, to whom the land was patented in 1862.

In 1880 T. H. Tanner asserted claim to the land and put a few acres in a field. In 1882 or 1883 he built a house and crib thereon and enlarged the field to 12 or 14 acres. He cultivated the field continuously until 1885, when he sold the place to his son, L. M. Tanner, who continued to claim the land and to cultivate said field up to the year 1902. On February 9, 1885, T. H. Tanner executed a deed conveying the land to his son, L. M. Tanner. This deed describes the land as the John Hartgraves survey of 210 acres, and also describes it by metes and bounds just as it is described in the patent. The deed was acknowledged on February 12, 1894, and duly recorded in the deed records of Liberty County on February 26, 1894. On March 16, 1907, L. M. Tanner and wife conveyed the land to appellee.

When T. H. Tanner first went upon the land he thought it was vacant land, and L. M. Tanner testified that he thought it was vacant public land at the time he bought it from his father in 1885, and did not know that he was buying the Hartgraves survey. That he intended to pre-empt it until he found out a year or two after his purchase that it had been patented to the heirs of Hartgraves. In May, 1894, L. M. Tanner married, and after his marriage he lived on the place until January, 1902. T. H. Tanner claimed the land at all times prior to the sale to his son, L. M. Tanner, and the latter held and claimed it as his own up to the time he conveyed it to appellee. He paid taxes on it from 1891 to 1906 inclusive, and in 1900 he redeemed it from tax sale to the State for taxes due thereon for the years from 1887 to 1889 inclusive. The receipt for 1899 shows that the taxes were paid on 182 acres of the land, and the 1906 receipt is for taxes on 163 acres. L. M. Tanner testified that the taxes were not paid on the entire tract because he had sold off a portion. The only deed of conveyance shown from him was the deed to appellee, which, as before stated, conveys the entire tract.

By his first assignment of error the appellant complains of the judgment on the ground that it having been shown by the undisputed evidence that at the time the Tanners took possession of the land they thought it was vacant public land—that no title by limitation could be acquired by their possession. The assignment is without merit. It is now settled that one can acquire title to the land of another by limitation notwithstanding the fact that at the time he takes possession he believes the land to be vacant public land and intends to acquire it from the State. If he actually holds and claims the land against all the world except the State his possession is adverse, and if continued for the length of time required by the statute will ripen into title. (Village Mills Co. v. Manley, 42 Texas Civ. App., 420; Morgan v.

White, 50 Texas Civ. App., 318.) This question, however, does not arise upon the facts of this case, because the evidence before set out shows that the adverse possession of L. M. Tanner continued for more than ten years after he discovered that the land was not public land and that it had been patented to the Hartgraves heirs.

The second assignment of error is as follows: "The court erred in rendering judgment for plaintiff, because the evidence shows that during the time the plaintiff and those under whom she holds attempted to acquire title by limitation, the superior title to the property in controversy was held by the heirs of John Hartgraves, deceased, who were married women and minors, and that this defendant holds title under a part of said heirs, and that the other title is outstanding against the plaintiff."

There is no evidence that appellant's predecessors in title were under disability at the time the adverse possession of Tanner began. Mrs. Bynum, one of the appellant's grantors, was married in 1888, but as the evidence shows she was born in 1860 and that the adverse possession of the land began prior to her marriage, her coverture did not affect the running of the statute.

In explanation of the tax receipts for 1899 and 1906, showing that he paid taxes on 182 acres for 1899 and 163 acres for 1906, L. M. Tanner testified that he had sold a part of the land. This is the only evidence in the record of an outstanding title to any portion of the land, and we do not think it is sufficient to raise the issue. Having conveyed the entire tract to the plaintiff by deed, Tanner's statement that he had previously sold a portion of the land, no previous deed from him being shown and no particulars as to what land was sold or to whom or under what circumstances the alleged sale was made, is insufficient to show any outstanding title to the land.

The third assignment of error is as follows: "The court erred in rendering judgment for the plaintiff, because the evidence fails to show that the plaintiff has had continuous adverse possession of the property in controversy under the statute of limitations for the period of time and manner required to acquire a title by limitation, in that (a) said possession has not been continuous and adverse; (b) during the period of said possession the plaintiff and those under whom she holds recognized the land as vacant public domain; (c) the title to the same was in married women under coverture and in minors during said period of pretended occupancy and limitation." The facts before stated, which are undisputed, establish none of the contentions upon which this assignment is based and it can not be sustained. We think the evidence is clearly sufficient to show title in appellee under both the five and ten years' statutes of limitation.

There being no error in the record, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused. Written opinion, 103 Texas, ——.