## THE ANDREA F. LUCKENBACH.

### BRAY v. LUCKENBACH S. S. CO., Inc.
### No. 7702.

Circuit Court of Appeals, Ninth Circuit.
Aug. 26, 1935.

C. H. Fish, of San Francisco, Cal., for appellant.

Louis T. Hengstler, Frederick W. Dorr, and Archie M. Stevenson, all of San Francisco, Cal. (Hengstler, Dorr & Stevenson, of San Francisco, Cal., of counsel), for appellee.

Before WILBUR and MATHEWS, Circuit Judges, and ST. SURE, District Judge.

WILBUR, Circuit Judge.

The appellant served as a wiper on board the steamship Andrea F. Luckenbach, belonging to the appellee, on a cruise from New Orleans to North Pacific ports. On the 5th of November, 1932, while the vessel was lying to off the mouth of the Columbia river, six lockers in the engine room crew quarters fell from the after

side of the quarters upon the appellant. The lockers were detached by reason of the breaking of a 3/16″ wire which held them in place. The trial court found that by reason of the insufficiency of this attachment the vessel was unseaworthy and that the appellee is liable for the injuries proximately caused by the accident.

■ The appellant, who was successful in the trial court, appealed on the ground that $1,500, the amount allowed by the trial court for the damage proximately caused by the accident, was entirely inadequate.

The appellant contended in the trial court that the head of the first left rib was dislocated and that there was a fracture of the arch of the first lumbar vertebræ, as the result of the accident in question. A large number of expert witnesses gave their opinion as to whether or not the dislocation and fracture was the result of the accident. Nine medical witnesses testified for the appellant and five for the appellee. During the trial of the case the appellant, who had declined to submit to a medical examination, suggested to the trial court that a competent medical expert be selected by the court, his fee to be paid by the parties jointly, and that all the evidence be submitted to this expert for the purpose of enabling him to form and express an opinion in the case. This opinion was unfavorable to the appellant. Dr. Abbott, the expert thus appointed, testified that in his opinion there was no fracture of the vertebræ and that the line on the X-ray plates which was interpreted by some of the expert witnesses as indicating an old healed fracture was not the result of a fracture. He also testified that in his opinion the dislocation of the first rib was congenital. He fortified his opinion by pointing out other anomalies of the spine, including the existence of an extra lumbar vertebra.

It appears from the evidence that appellant served during the World War in the British Expeditionary Force; that he was wounded by shrapnel in several places; and that he was in the Veterans' Hospital in Boston in 1920 and 1921, exhibiting symptoms very similar to those claimed to have resulted from the accident in question.

Without attempting to fully state or discuss the evidence before the trial court, enough has been said to show that the principal issue was whether or not the physical difficulties from which the appellant was suffering were the result of the accident. This question of the determination of the facts from conflicting evidence of witnesses who appeared before the court is one peculiarly for the trial court. The evidence was weighed with painstaking care and an elaborate opinion analyzing the testimony was prepared by the trial judge. The well-established rule is applicable that the decision of the trial court in admiralty cases upon controverted questions of fact will not be disturbed by the appellate court unless clearly against the weight of the evidence. The Mabel (C. C. A.) 61 F.(2d) 537; The Bergen (C. C. A.) 64 F.(2d) 877; Matheson et al. v. Norfolk, etc., S. S. Co. (C. C. A.) 73 F. (2d) 177; The Vinemoor (C. C. A.) 75 F. (2d) 28. The case of the appellant has been presented with clarity and critical analysis of the testimony, but nothing has been presented which would justify this court in reversing the decision of the trial judge upon the facts.

■ Counsel assigned as error the admission of certain hospital records kept by the United State Public Health Service. These records were properly admissible. United States v. Harbanuk (C. C. A.) 62 F.(2d) 759; Rev. St. § 882, amended June 19, 1934, 48 Stat. 1109, 28 USCA § 661. Even if the trial court had doubt as to the competency of this evidence, it should have been admitted for the benefit of the appellate court upon appeal where the case is tried de novo. Minnesota S. S. Co. v. Lehigh Valley Transp. Co. (C. C. A.) 129 F. 22.

■ The appellant moved for a rehearing in the trial court ten months after the trial had been concluded, basing said motion upon certain newly discovered evidence. Part of the proposed testimony thus sought to be introduced into the case was the record of the treatment of the appellant at the United States Naval Hospital, Great Lakes Training Station, Ill., and testimony given by six expert witnesses, five of whom had testified at the trial of the case, and evidence as to the weight of the steel lockers which fell upon and injured the appellant. There was no abuse of discretion in denying this motion. Appellant has petitioned for leave to take further testimony in this court upon the same ground. Among other things, it is sought to introduce the testimony of a number of doctors, including that of Dr. Leonard E. Ely.

The evidence is mostly cumulative and no reason is shown why the extraordinary right to submit evidence in the appellate court should be here permitted. It is worthy of note, however, that the proposed testimony of Dr. Ely with reference to the dislocation of the head of the first rib states, "It is impossible to say whether the dislocation upward of the first left rib is traumatic or anomalous." If this is true, the appellant cannot recover for the effects of such dislocation because the burden is upon him to show that the injuries from which he suffers were proximately caused by the accident. It is true that the doctor follows this statement by stating that certain symptoms exhibited by the appellant shortly after the accident tended to indicate a dislocation at the time of the accident. This division of opinion among the expert witnesses as to whether this dislocation was the result of the accident or was anomalous would tend to show that the conclusion of Dr. Ely was correct, namely, that it is impossible to say whether the dislocation was the result of the accident or not.

The petition for leave to take further testimony in this court is denied.

Decree affirmed.