### JOY v. JOY.

### No. 2165.

Court of Civil Appeals of Texas. Eastland.

Oct. 17, 1941.

Rehearing Denied Nov. 21, 1941.

Thompson, Knight, Baker, Harris & Wright, of Dallas, Bond, Crofts & Bond, of Terrell, and Fred T. Porter, of Kaufman, for appellant.

Thompson & Meek and Paul McCarroll, all of Dallas, and C. S. Bradley, of Croesbeck, for appellee.

GRISSOM, Justice.

Helen Ruth Joy, guardian of the person and estate of her husband, M. A. Joy, Jr., instituted this suit against M. A. Joy, Sr., for the purpose of canceling an instrument executed by M. A. Joy, Jr., in November, 1933, and designated in the record as a "Release and Conveyance." She alleged that Mrs. Emma Gertrude Joy (mother of M. A. Joy, Jr., and wife of M. A. Joy, Sr.) died in June 1932 leaving a valuable estate; that in 1932 Joy, Sr., filed an application to probate her will dated April, 1917; that the court admitted the will to probate; that in May, 1933, M. A. Joy, Jr. (hereinafter referred to as Martin), filed a contest of said will and sought to set aside the order admitting it to probate and urged the probate of a will dated July, 1918; that while this contest was pending Martin executed the instrument in question in which it was recited that for a consideration of $1 and the love and affection he had for his father that he sold and conveyed to his father all of his rights or claims to the estate of his deceased mother. The instrument recited it was intended as a conveyance of all property of all kinds which Martin had or claimed either as an heir or devisee of his mother, and all rights that Martin had in the cause of action he had instituted for the contest of the will probated by his father,

or under the will which he sought to have probated as the last will of his mother. Plaintiff alleged that the defendant falsely represented to Martin that he had no interest in his mother's estate; that she had executed a valid re-affirmation of her 1917 will in 1926 and again in 1932; that said representations were false; that Martin's interest in Mrs. Joy's estate was in excess of $150,000; that Martin was insane when he executed the "Release and Conveyance"; that the consideration received by Martin therefor was $51, $50 of which was paid in the guise of a loan. Plaintiff alleged that said instrument constituted a cloud upon Martin's title to his interest in the estate of his deceased mother, and that said instrument should be canceled because of Martin's insanity at the time he executed it. The defendant, among other things, pleaded the four years' statute of limitations. Art. 5529.

At the conclusion of the evidence the cause was submitted to a jury on one issue which was answered favorably to plaintiff. The court rendered judgment canceling the release executed by Martin to his father in November, 1933. The judgment recited that before the charge was submitted defendant represented he did not desire the submission of the issue of limitation. From this judgment the defendant has appealed.

Appellee introduced in evidence the judgment of the County Court of Dallas County rendered in April, 1939, decreeing Martin to be of unsound mind and appointing his wife his guardian. The issue made by the pleadings and the evidence was whether Martin was of unsound mind in November, 1933, when he executed the instrument denominated a "Release and Conveyance." That issue was submitted to the jury. Another issue was made by the pleadings but was not submitted and its submission was not requested by defendant. That was the issue of limitation; that is, whether appellee's suit was barred by the four years' statute of limitations, Art. 5529. The judgment of the County Court in April, 1939, decreeing that Martin was then of unsound mind did not tend to prove, and was not admissible in evidence on the issue as to whether Martin was of unsound mind in November, 1933, when he executed the release and conveyance to his father. Uecker v. Zuercher, 54 Tex.Civ.App. 289, 118 S.W. 149, 152, writ refused; Black v. Boyer, Tex.

550

Civ.App., 21 S.W.2d 1094, writ dismissed; Wright v. Matthews, Tex.Civ.App., 130 S.W.2d 413.

We are further of the opinion that the 1939 judgment of insanity was not material to the issue of limitation. If at the time Martin executed the instrument in November, 1933, or at any time thereafter Martin was sane, limitation then began to run and continued to run, regardless of whether Martin was insane in 1939 when he was so adjudged by the County Court and his guardian appointed. Article 5544 provides " * * * when the law of limitation shall begin to run, it shall continue to run, notwithstanding any supervening disability of the party entitled to sue or liable to be sued." Hoencke v. Lomax, 55 Tex.Civ.App. 189, 118 S.W. 817, 819, writ refused, 102 Tex. 487, 119 S.W. 842; Kimmell v. Tipton, Tex.Civ.App., 142 S.W.2d 421, 431; Chandler v. Alamo Mfg. Co., Tex.Civ.App., 140 S.W.2d 918, 921; Kuhlman v. Dickson, Tex.Civ.App., 233 S.W. 338, 339.

The 1939 judgment of insanity appears to have been introduced upon the theory that it was necessary for appellee to prove the guardian had legal capacity to sue and recover as such. Article 2010 provides that an answer alleging, among other things, "2. That the plaintiff has not legal capacity to sue. 3. That the plaintiff is not entitled to recover in the capacity in which he sues", unless the truth thereof appears of record, shall be verified by affidavit. The guardian's lack of capacity to sue and recover as such did not appear of record, and the defendant did not make an issue of the right of the guardian to maintain the suit and recover in her capacity as guardian. In the absence of such a pleading by the defendant, there was no issue before the court as to the guardian's legal capacity to sue and recover in her capacity as guardian. We conclude, therefore, that the judgment of insanity and order appointing Mrs. Joy guardian was not admissible for said purpose. Pierce v. Baker, Tex.Civ.App., 143 S.W.2d 681, 682, writ refused; Dolsen v. DeGanahl, 70 Tex. 620, 8 S.W. 321; Schlottmann v. Wiese, Tex.Civ.App., 86 S.W.2d 44, 49; Kaack v. Stanton, 51 Tex.Civ.App. 495, 112 S.W. 702, writ refused. After a careful consideration of the questions presented by the appellant's first eight assignments of error, we have concluded that the court erred in admitting in evidence the order of the court adjudging Martin to be of unsound mind in April, 1939. We are further of the opinion that under the pleadings and conditions that existed on the trial of this cause it was error to advise the jury that Martin had been adjudged of unsound mind.

Plaintiff introduced in evidence a part of Martin's army record, including his enlistment record, court martial record, record of physical examination, certificate of disability for discharge, medical cards, statistics cards, clinical records, proceedings of the board of medical officers and his medical history while in the United States army. These instruments showed his enlistment in the United States army; that he was tried three times in 1917 by a court martial; that he was sentenced to confinement at hard labor for four months and to forfeit two-thirds of his pay for such period; that he was examined by a board of medical officers convened at the base hospital at Camp Bowie, which board after a careful consideration of all the evidence obtainable, and a thorough examination of Martin found Martin to be unfit for service as a soldier because of his "constitutional psychopathic state" which was found to have existed prior to his enlistment, and that such incapacity caused him to be unreliable and a constant annoyance to the command. It further found that he could be released without endangering his life or the lives of others. It was recommended that he be discharged on a certificate of disability, not incurred in line of duty. The records further showed that Martin was a frequent military offender and had spent as much time in the guard-house as he had doing duty. That the "cause of his disease or circumstance under which it appeared" was "unknown". That he was, in view of his occupation as a surveyor, disabled from earning subsistence to the extent of one-fifth. That Martin had been, prior to the finding of the board of medical examiners, under their observation for a period of one week. The record showed the following findings with reference to Martin: "Constitutional psychopathic state. Inadequate personality and borderline criminalism. In line of duty: No. Date of injury or onset of disease: Congenital. Reason for examination: To determine fitness for service." Said records were severally objected to as being ex parte, hearsay, immaterial, irrelevant

and incompetent, and as having no probative force in determining the mental condition of Martin at the time he executed the instrument involved, about 15 years thereafter, and as being too remote. The action of the court in overruling said objections and in permitting the introduction of the War Department records are assigned as error and are presented here by appellant's ninth to fifteenth propositions, inclusive.

 U.S.C.A. Title 28, sec. 661, provides that copies of records or documents in any of the executive departments authenticated under the seal of such department shall be admitted equally with the originals thereof. We are of the opinion that the diagnosis of the army doctors is admissible in evidence as tending to prove Martin's mental condition at said time. We do not believe that the recitals showing the evidence upon which, in part, the diagnosis may have been made, nor the finding that the disease was congenital and the like, were admissible. That the diagnosis as shown by the records of the War Department was admissible as an exception to the rule against hearsay evidence seems to be generally recognized. 20 Am.Jur. 865; 10 R.C.L. 1125; 22 C.J. 805; Long v. United States, 4 Cir., 59 F.2d 602, 605; Gilmore v. United States, 5 Cir., 93 F.2d 774, 776; 16 A.L.R. 247; 36 Tex.Jur. 678; 17 Tex.Jur. 663; Southwest Bitulithic Co. v. Dickey, Tex.Civ. App., 28 S.W.2d 264, 267; Fegan v. Lyke Bros., La.App., 195 So. 392, 397; Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 973, 133 A.L.R. 255; Huffman v. National Surety Co., 244 Ky. 714, 51 S.W.2d 950; Harper v. Marion County, 33 Tex.Civ.App. 653, 77 S.W. 1044; Denton v. English, Tex. Civ.App., 171 S.W. 248; Sprencel v. United States, 5 Cir., 47 F.2d 501; United States v. Timmons, 5 Cir., 68 F.2d 654; Chesapeake & Delaware Canal Co. v. United States, 3 Cir., 240 F. 903; The Andrea F. Luckenbach, 9 Cir., 78 F.2d 827; Price v. State, 118 Tex.Cr.R. 82, 38 S.W.2d 811; Wetmore v. United States, 10 Pet. 647, 9 L. Ed. 567.

Appellant contends that the Court of Civil Appeals held and that the Supreme Court, by inference, held to the contrary in Commercial Standard Ins. Co. v. Noack, Tex.Civ.App., 45 S.W.2d 798, Tex. Com.App., 62 S.W.2d 72. The Court of Civil Appeals did hold in said case that a certified copy of the physician's report of examination when an employee was drafted into the army and a document signed by an army captain reciting that the soldier was recommended for discharge because of his physical condition were inadmissible thereafter in said soldier's suit as an employee under the Workmen's Compensation Act as evidence that the employee's condition was not the result of an accidental injury which was the basis of his claim for compensation, but, on the contrary, that the employee's condition had existed long before the alleged accidental injury and at the time when he was in the United States Army. However, we think it should be noticed that the physician's diagnosis is not considered in that case as being a public document, nor is any mention, much less discussion, made of such testimony with reference to whether or not it came within the exception to the hearsay rule by virtue of which the diagnosis was offered in evidence in the instant case. The Supreme Court did not decide the question of the admissibility of the doctor's diagnosis in the Noack case, either as an exception to the hearsay rule now under consideration or otherwise. It is true, as is asserted by appellant, that said court permitted the case to go to trial again with the Court of Civil Appeals holding such testimony was not admissible. Of course, we do not know whether or not the question here presented was presented either to the Court of Civil Appeals or to the Supreme Court in that case.

 The trial court erred in permitting appellee to introduce the evidence of lay witnesses as to Martin's sanity in answer to hypothetical questions. The answers to many of said questions were such that they could not possibly have been prejudicial to the appellant. However, that cannot be said as to the answers of some of the lay witnesses to such questions; for example, the answer of the witness Gavito. 22 Tex. Jur. 426.

Two letters written by Martin to his father and brother were introduced by plaintiff. The first commenced "From Martin A. Joy, Jr. (Blacksheep) Maybe— To Supposedly his beloved Family." Martin said this was probably his last letter to "you people"; that he desired it to be a masterpiece; that he had feelings left—"feelings of hunger—Hate—wretchedness and feelings even of love, but love is mostly for my poor little fatherless

baby—." He expressed the hope his baby might be reared a million miles away from "my people." "My People—That's a joke, I haven't any people. * * * As you people well know there was handed down to me through posterity and heredity the love of liquor." The first letter further stated Martin couldn't get work; that he had gone without shelter, clothing, or food and that his people had refused to help him. He said he preferred sending the letter to his father than to his mother; that he did not desire to hurt his mother or "a single thing in all this world" but that if he sent the letter to his father it would be returned unopened.

The second letter was dated June, 1932, and addressed to his brother. It shows he was confined somewhere in Louisiana. He criticised his brother and father for spending "a whole two cent stamp" in notifying him of his mother's death, not notifying him by telegraph and going on his bond so he could attend her funeral. He said that his father and another were the only ones present when his mother was stricken and they had a perfect "iron clad alibi— who knows what happened back there but the two of them—Indirectly at least, M A Joy's inhuman actions killed my mother— The only true friend I ever had."

The introduction of the first letter was objected to by defendant because it was immaterial, irrelevant to any issue in the case, hearsay, self-serving; because it was an attempt to incite the jury to hatred for the defendant; because it permitted injection into the case of the issue as to whether in the past defendant had refused to help his son; because it was not shown definitely when the letter was written and because too remote. The defendant specifically objected to the statement that Martin inherited his love of liquor because it was inflammatory, prejudicial and immaterial. Defendant specifically objected to that portion of the letter wherein Martin accused the defendant and his family of refusing to help him and permitting him to go hungry, ragged and without shelter, as being immaterial and prejudicial. Defendant specially objected to that part of the letter referring to his "poor fatherless child" because it was immaterial, prejudicial, calculated to arouse sympathy for the plaintiff and hatred for defendant. The second letter was objected to because hearsay, immaterial, prejudicial and self-serving. De-

fendant objected to that part of the letter which stated "Mr. Warren and M A were the only ones in the rear office when Mother was stricken—the two of them have a perfect 'iron clad alibi'—who knows what happened back there but the two of them—Indirectly at least M A Joy's inhuman actions killed my mother—The only true friend I ever had" for the same reasons, and further, because said portion was immaterial, irrelevant, prejudicial and inflammatory in that it accused defendant of a crime and because it was too remote.

Defendant introduced 31 letters written by Martin to his father and brother between 1918 and April, 1932, as well as letters to Hon. J. W. Chancellor, defendant's attorney. Said letters were examined by defendant's medical experts who, basing their opinion upon an examination of said letters, testified in their opinion Martin was of sound mind. One of appellant's experts, Dr. Witt, testified an insane person might write sensible letters, but that over a long period of time, if he should write many letters, some of them would very likely show signs of insanity.

■ After the introduction of Martin's letters by defendant, plaintiff introduced said two letters and asked the court to place a limitation upon the purpose for which they might be considered. Defendant made no request that said evidence be limited, but excepted to any statement of limitation. If these letters were admissible for any purpose, the burden of requesting a proper limitation was upon the defendant. Blum Milling Co. v. Moore-Seaver Grain Co., Tex.Com.App., 277 S.W. 78; Texas Emp. Ins. Ass'n v. Downing, Tex.Civ.App., 218 S.W. 112, 123; Greenleaf on Evidence, 15th Ed. 731.

■ Some of the letters from Martin, introduced by defendant, bore evidence of a genuine affection for defendant. For instance, a letter written by Martin, in April, 1933, to his father commenced "Dear Dad", was signed "Martin", and professed his love for his father. He said he was going to instruct his attorney to stay all proceedings in Martin's suit contesting the will presented for probate by his father. In this letter he said he desired to show his father that he was not capitalizing on his mother's death. This letter was written considerably less than a year after Martin, in one of the letters heretofore quoted from, had indirectly accused his father of his mother's murder and stated his mother was the only

'true friend he ever had. These letters in which he bitterly assails his father and brother were certainly not in accord with the recited consideration in the conveyance to his father of all Martin's interest in his mother's estate for $1 and the love and affection he bore his father. We think they were admissible in evidence and were properly considered by the jury on the question of Martin's insanity in connection with the series of letters written by Martin during the same period of time, which were introduced by defendant. They were particularly admissible in connection with the testimony of defendant's medical expert, Dr. Witt, to the effect that an insane person might write sensible letters, but that if he wrote many of them over a long period of time some of them would probably show evidence of insanity. Blum Milling Co. v. Moore-Scaver Grain Co., Tex.Com.App., 277 S.W. 78, 81; Houston & T. C. Ry. Co. v. Poole, 63 Tex. 246, 247; Youngblood v. Youngblood, Tex.Civ.App., 46 S.W.2d 390, 394; Greenleaf on Evidence, 15th Ed., 731.

■ The cause was submitted to the jury on one special issue, as follows: "Do you find and believe from a preponderance of the evidence that Martin A. Joy, Jr. was of unsound mind, as that term is hereinbefore defined, at the time of execution on November 27, 1933, of the instrument in question?" The issue was answered "Yes." The term "unsound mind" was defined as follows: "You are instructed that a person is deemed to be of unsound mind when he has not the ability to transact the ordinary affairs of life, to understand their nature and effect, and exercise his will in relation to them." Appellant objected to the issue and definition among other reasons because the court's definition of unsound mind was an abstract definition and did not specifically apply the law to the facts in the instant case and because the only issue involved was the ability of Martin to understand the nature and subject-matter of the particular instrument he executed and the consequences thereof, and, further, because the issue submitted and the definition of the term unsound mind did not confine the jury to a consideration of the transaction in question and to the instrument sought to be canceled on account of Martin's alleged mental incapacity. In connection with said objection appellant requested the court to submit the following issue: "Do you find from a preponderance of the evidence that at the time of the execution of the instrument involved in this suit Martin A. Joy, Jr. did not have sufficient mental capacity to understand the nature and subject-matter of such instrument and the consequences of his act in signing it?" We are of the opinion that the issue submitted should have inquired whether Martin had the mental capacity to understand the nature and subject-matter of the particular instrument in question, and the consequences of his act in signing it, and that the issue requested by the appellant should have been submitted. Smith v. Thornhill, Tex.Com.App., 25 S.W.2d 597, on rehearing, Tex.Com.App., 34 S.W.2d 803; Smith v. Guerre, Tex.Civ.App., 175 S. W. 1093; Stewart v. Miller, Tex.Civ.App., 271 S.W. 311; Cox v. Combs, 51 Tex.Civ. App. 346, 111 S.W. 1069; McCleskey v. McCleskey, Tex.Civ.App., 7 S.W.2d 657; Brito v. Slack, Tex.Civ.App., 25 S.W.2d 881; Clement v. Rainey, Tex.Civ.App., 50 S.W.2d 359, writ refused; Kaack v. Stanton, 51 Tex.Civ.App. 495, 112 S.W. 702.

■ Plaintiff's thirty-third to thirty-fifth propositions, inclusive, are to the effect that the court erred in not permitting appellant to testify as to his opinion of the mental condition of his son. Article 3716, insofar as it is here material provides "In actions by or against * * * guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the * * * ward, unless called to testify thereto by the opposite party * * *." Appellant's statement in connection with said contention shows that plaintiff introduced in evidence a letter from the defendant to her with reference to Martin. We assume that appellant means that by virtue of the introduction of said letter that appellant was thereby "called to testify thereto by the opposite party."

After careful consideration of the contention as presented we have reached the conclusion that error in that respect is not shown. Horst v. Tobin, Tex.Civ.App., 18 S.W.2d 221, writ refused; Olschewske v. Priester, Tex.Com.App., 276 S.W. 647.

Our former opinion is withdrawn, our former judgment is set aside, appellant's motion for rehearing is granted, and the judgment is reversed and the cause remanded.