Florelle Virginia MURRAY, Appellant,

v.

Walter O. SLATER, Appellee.

No. 10261.

Court of Civil Appeals of Texas.

Austin.

Jan. 5, 1954.

Rehearing Denied Feb. 9, 1955.

Townes & Townes, Wm. A. MacNaughton, Houston, for appellant.

Fred L. Blundell, Lockhart, W. O. Slater, Luling, for appellee.

ARCHER, Chief Justice.

This is a suit in trespass to try title to certain lots and blocks in Lipscomb Place Addition, near Luling, in Caldwell County, instituted by appellant.

Appellee answered by a plea of not guilty, and further claimed title by virtue of the ten-year statute of limitation, Vernon's Ann.Civ.St. art. 5510, and further that the lands described in plaintiff's petition were wholly within the boundary of a 64-acre tract, described in defendant's pleadings.

By supplemental pleading plaintiff, in reply to the claim of the ten-year limitation statute, alleged that the lands sued for were surrounded as contemplated by Article 5511, V.A.C.S. and that there had been no compliance with said statute. Defendant, by supplemental answer, alleged that said article was not applicable.

The case was tried before the court without a jury.

The trial court made findings of fact and conclusions of law.

The appeal is before this Court on five points assigned as error and are to the effect that there was no evidence to support the judgment; that there is insufficient evidence to support the judgment, and a fact finding that title to the various lots was vested in appellee under the ten-year statute of limitation and no continuous use and cultivation of the lots as contemplated by Article 5510, V.T.C.S.; that appellee's possession and claim of the lots under the ten-year statute of limitation was limited by the provisions of the statute in that it was shown that interior tracts were circumscribed by other lands; that the evidence was not sufficient upon which to make a finding of fact and conclusion of law; and to support a judgment based thereon that Dr. Murray was of sound mind prior to September 13, 1933, and subsequent to April 6, 1942.

The subdivision is of a 64-acre tract located approximately one half mile west of the west city limits of Luling. The proposed plat or subdivision was not approved by the City Commission of the Commissioner's Court of Caldwell County.

In the deed of conveyance to the Murrays dated October 17, 1929, a vendor's lien was retained on all of the lots conveyed, except about 50 lots, to secure the payment of five notes, Nos. 1, 2, 3, and 4 each in the sum of $5,000 and note No. 5 in the sum of $4,500, and each payable on or before five years after date, with interest, with the usual maturity clauses on failure to pay principal or interest, and payable to Mid-Coast Realty Corporation.

Appellee claims that L. S. Murphy became the owner of three of the notes, each for $5,000, and employed appellee as an attorney to collect them, and that after an extensive effort and time and being unable to collect the notes, Murphy, by oral conveyance, gave appellee all of his title and interest in the notes, and that appellee went into possession of the 64-acre tract, also known as Lipscomb Place Addition, in 1930–1931, and remained in exclusive possession thereof, making valuable improvements, reconstructing the fences, making his home on said land continuously, paying all taxes, and cultivating and grazing all of said land to the exclusion of all other persons, and that such possession was notorious, open and adverse to all persons.

The appellee further asserts that Dr. Murray was committed to a mental institution more than two years subsequent to the time appellee went into possession of the land. .

That Dr. Murray was restored as of sound mind on April 6, 1942, and died March 6, 1953.

The case was tried before the court without a jury.

■ The trial court made findings of fact and conclusions of law and found that no part of the land is within the corporate limits of any city; that Dr. Murray was of sound mind at all times prior to September 13, 1933 and subsequent to April 6, 1942; that appellee acquired three vendor's lien notes each in the sum of $5,000 by parol conveyance each having been executed by the Murrays; that the notes were in default and appellee entered upon the 64-acre tract in the year 1931, and has claimed, used and occupied and cultivated all of the land since 1931 under a good substantial fence and has rendered the land for taxation and paid all taxes since the year 1933, and that appellee's possession has been and is peaceable, open, notorious and adverse to all the world from 1931 to date; that appellee constructed valuable improvements and described same; that there was not, in the year 1931, or at any time thereafter, any evidence upon the land of any subdivision or division of same into identifiable lots and blocks; that the land claimed by plaintiff in her pleadings is not circumscribed by property owned and claimed by defendant, nor has same ever been; that defendant's right or title to the land in controversy had never been questioned from the time he went into possession thereof in 1931 until the filing of this suit.

The court concluded as a matter of law, that defendant, having acquired title to the three notes, also became the owner of the superior title to the land and had a right, without notice, upon maturity of and nonpayment of said notes, to enter upon and take possession of all of said property; that defendant now has title to all of the land described in plaintiff's original petition, under and by virtue of the ten-year statute of limitation, which began to run against plaintiff and her husband in the year 1931, and that subsequent insanity of Dr. Murray would not and did not interrupt the running of said statute; that the land claimed by plaintiff was not circumscribed by lands claimed by defendant, and that Article 5511 is not applicable.

In support of the judgment and the findings of facts, appellee testified that he had lived in Luling since 1919; that he was married and had a family and was a practicing attorney. The witness testified that he represented a man by the name of Murphy who owned three $5,000 notes executed by Dr. Murray, in an effort to collect them. That suit was filed on the other notes by a Houston attorney in the Fall of 1930. The witness testified that he made several trips to Houston in an effort to work out a settle-

ment but could not as it was ascertained that there was a large amount of back taxes against the property and Mr. Murphy on learning this and of the suit threw up his hands and said "I don't want to have anything more to do with it. You may have whatever I have got in it. You have spent some money on it and a lot of time, you can have my interest. I am through."

The witness then testified that in 1931 he and his wife went on and took possession of the property, reconstructed the fences, improved and added to the house and executed a mechanic's lien on the 64-acre tract, which was placed of record; that the property was acreage and nothing on the ground to indicate that the property had ever been subdivided, and that he was claiming the whole tract. The witness further testified concerning the usage of the property, by tenants and otherwise, such as farming and grazing, etc.

The witness testified that he had paid taxes from 1933 down to date. That the cost of improvements was about $2,500.

J. L. Harris testified that appellee moved on the property in 1931 or 1932, and has continued to reside thereon.

Mrs. Murray testified as to her marriage to Dr. Murray and as to Dr. Murray's profession and as to the purchase of the property and executing certain notes. That Dr. Murray stopped practicing medicine in 1929 or 1933, as he was in failing health.

There was in evidence an order dated September 13, 1933, finding Dr. E. Clifton Murray of unsound mind from the County Court of Harris County, Texas.

There is also in evidence an order from the County Court of Bexar County, Texas, dated April 6, 1942, restoring Dr. Murray to his right mind.

Dr. Murray died December 13, 1952.

Mrs. Murray testified that she knew Mrs. Ruby N. Murphy, from whom she got a deed subsequent to the filing of this suit. The witness testified that she had driven by the property many times.

We believe that the court's finding and judgment finds reasonable support in the record.

■ Since this case was tried before the court without a jury the Judge is the trier of the facts and is the sole judge of the credibility of the witnesses and of the weight to be given their testimony, and we, as an appellate court, must, under such circumstances, gives credence only to the evidence favorable to the trial court's findings and judgment and disregard all evidence to the contrary in an effort to determine whether or not the evidence heard supports the trial court's findings and judgment and to uphold such findings.

Boston Insurance Co. v. Rainwater, Tex. Civ.App., 197 S.W.2d 118; Labay v. Amicable Life Insurance Co., Tex.Civ.App., 261 S.W.2d 476; Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972.

We do not believe that the provisions of Article 5511, V.A.C.S., are applicable in this case. The appellant claims all of the property described in the pleadings and which is all of the property conveyed to the Murrays, except some lots sold, and it is made to appear that the subdivision covered all of the 64-acre tract and consequently not completely circumscribed by lands owned by appellee.

Ross v. Houston Oil Fields Ass'n, Tex. Civ.App., 88 S.W.2d 586; Richey v. Miller, 142 Tex. 274, 177 S.W.2d 255, 170 A.L.R. 832.

■ The testimony is that appellee went into possession of the lands in 1930 or 1931, and that Dr. Murray was found to be insane September 13, 1933. A further finding was made by the County Court of Bexar County that Dr. Murray was of sound mind on April 6, 1942.

The statute began to run as soon as appellee went into exclusive possession of the lands adversely to the world and continued to run until the filing of this suit on March 6, 1953.

Tyson v. Britton, 6 Tex. 222; Joy v. Joy, Tex.Civ.App., 156 S.W.2d 547; Stubbs v. Lowrey's Heirs, Tex.Civ.App., 253 S.W.2d 312, error ref., n. r. e.

There was an effort made to show nonuse of the streets but appellee in purchasing Lot No. 10, in Block 4 of the Addition on which he made repairs to the house thereon in some manner recognized the location of the subdivision and no abandonment was pleaded or shown.

Article 5517, V.A.C.S., provides that the State shall not be barred by any of the provisions of this title, etc.

Adams v. Rowles, 149 Tex. 52, 228 S.W. 2d 849; Estes v. Campbell, Tex.Civ.App., 259 S.W.2d 926, no writ history.

Whether these streets have been lawfully dedicated to public use is a question not before us and our judgment is without prejudice to the rights of the public insofar as the streets are concerned.

With the statement we have made we affirm the judgment of the trial court.

On Motion for Rehearing

PER CURIAM.

The only errors assigned in appellant's Motion for Rehearing are that we erred in not holding that the nature of appellee's adverse possession of the lots in suit should be measured by the requirements of Art. 5511, V.A.C.S., appellant's contention being that, as a matter of law, most of the lots which he owns are entirely surrounded by lands owned or claimed by appellee and that there was no evidence or insufficient evidence to satisfy the requirements of such Article.

We will not further concern ourselves with the evidence question because we are convinced that Art. 5511 is inapplicable.

There are numerous lots, mostly in solid blocks, of which the record shows that appellant alleged and proved ownership. These lots, as we understand their location, either adjoin the perimeter of the lands claimed by appellee in this suit or they are lots which connect directly or by interlocking calls to such perimeter lots. An example is Block 10 in which Lot 1 is a perimeter lot being bounded on the East by lands not claimed by appellee. Lot 2 lies immediately West of Lot 1 and Lot 3 West of Lot 2 and so on for the remaining lots in the tier. Appellant does not contend that Lot 1 is entirely surrounded by lands claimed by appellee but he does contend that interior Lot 2 is so surrounded since appellee claims Lot 1 on the East and Lot 3 on the West by limitation.

Art. 5511 is one of several statutes relating to the acquisition of title to land by adverse possession. It distinguishes between the ownership of the land in controversy by one person who is out of possession and other lands owned, claimed or fenced by another person who claims by adverse possession the lands so owned by the first person. In the illustration given above Lot 1 is land owned by appellant and hence is not land owned, claimed or fenced by appellee within the meaning of Art. 5511 even though Lot 1 is claimed by appellee by adverse possession. The effect of what appellant would have us hold is that he be allowed the privilege of disclaiming ownership of Lot 1 in order to invoke the provisions of Art. 5511. This he cannot do for it would permit circumscription by circumvention and enable the owner to disclaim perimeter strips where needed to complete the encirclement of his lands. The statute certainly does not contemplate its evasion in this manner and upon principle it cannot be sustained.

With this explanation the motion for rehearing is overruled.

Motion overruled.