### HOUSTON OIL CO. OF TEXAS v. SKEELER et ux.

### No. 5589.

Court of Civil Appeals of Texas. Amarillo.

Feb. 14, 1944.

Sears, Blades, Moore & Kennerly, of Houston (Sam R. Fisher, of Houston, of counsel), for appellant.

K. W. Stephenson, of Orange, for appellees.

PITTS, Chief Justice.

Appellant, Houston Oil Company of Texas, a corporation, sued appellees, W. J. Skeeler and wife, Lucy Skeeler, for title to and possession of 18 acres of land, the same being a part of the Stephen Jett Survey, Orange County, Texas. Appellant claimed said land under record title and appellees claimed it under both record title and the ten-year statute of limitation as provided in Article 5510, Vernon's Revised Civil Statutes of Texas.

The case was tried before a jury who found that appellees had been in peaceable, adverse and continuous possession of said land, cultivating, using or enjoying the same for a period of ten years or more prior to the filing of the suit on March 21, 1942, and judgment was rendered for ap-

pellees by the trial court, from which judgment appellant perfected its appeal to the Court of Civil Appeals of the Ninth Supreme Judicial District at Beaumont and the same was transferred to this court by the Supreme Court of Texas.

Appellant contends in its first point that the evidence is insufficient to support the finding of the jury for appellees on the ten-year statute of limitation.

The record discloses that appellees purchased on September 16, 1919, from Albert Skeeler, administrator of the estate of Tony Havelott, deceased, a tract of land described as follows, to-wit: "A certain tract of land situated in the County of Orange, State of Texas, being 80 acres of land known as the home place of Tony Havelott, deceased, and being the place upon which the said Tony Havelott resided for a number of years before his death;" that appellees moved onto the said tract of land on November 30, 1922, and have lived there as a family continuously since said date; that when appellees bought the said property it was enclosed with a fence separating it from adjacent property owned by other parties on the south, west and north sides and with the Adams Bayou on the east side, serving as a barrier to keep stock from going within or without the enclosure and that the said tract of land had been thus completely enclosed for at least twenty-five years. The record does not disclose who built the fences thus helping to enclose the tract of land nor for what particular purpose the said fences were built but the record does show that appellees for twenty years or more had looked after said fences and had kept them in good repair with the possible help of adjacent property owners, but the record does not disclose that anybody other than appellees claimed any right or use of the said fences. The record further discloses that appellee, W. J. Skeeler, was a nephew of Tony Havelott, deceased, and had known the property in question since he was a child and had helped to farm the Tony Havelott home place when he was a boy and knew the boundaries of the said home place; that appellees rebuilt their home and placed other improvements, such as barns, dairy sheds, small pastures fenced off within the enclosure and a garden on the land purchased and fenced off and cultivated some of the said tract of land; that the 18 acre tract involved in this suit is located within the enclosure above described in the southeast corner of same and has been within said enclosure continuously since appellees purchased the Tony Havelott home place on September 16, 1919, and prior thereto; that there are no fences separating the said 18 acres from the rest of the land within the enclosure and used by appellees; that there are no houses, barns, sheds or cultivated crops on the said 18 acres of land; that appellees used the said 18 acres along with other parts of the land within the enclosure for pasture land for cattle, horses, mules, goats, sheep and hogs; that the said 18 acres along with other parts of the land within the enclosure is timbered land and that appellees since their occupancy had gotten fence posts from said land and had gotten their firewood from said land and often kept the surplus of firewood stacked and ricked on the said 18 acres of land and used said wood as it was needed. The above facts are supported by the undisputed testimony of appellees and several disinterested witnesses.

Although the east side of the entire tract of land was enclosed by Adams Bayou, the testimony clearly showed that said bayou served as a complete barrier and kept livestock within or without the entire enclosure at all times, and that the bayou was of such a character as to form, together with the fences on the other three sides of the tract of land, a complete enclosure.

The Adams Bayou seems to have served as a barrier such as has been approved in the case of Houston Oil Company of Texas v. Howard, Tex.Civ.App., 256 S.W. 340, affirmed by the Commission of Appeals in 294 S.W. 848, and 2 Tex.Jur. 94, sec. 49, and authorities thereunder cited.

■ We do not understand it to be the rule that appellees must have had the 18 acres in question under a separate enclosure from their adjacent lands before they could acquire title thereto by peaceable, adverse and continuous possession under the ten-year statute of limitation. It seems to be the rule that a general enclosure including the 18 acres of land in question with other lands owned, used and occupied by appellees is sufficient if appellees had peaceable, adverse and continuous possession of same. Port City Co. v. Peck et ux., Tex.Civ.App., 42 S.W.2d 275; Moran v. Moseley et al., Tex.Civ.App., 164 S.W. 1093; Johnson v. Sullivan, Tex.Civ.App., 163 S.W. 1015; Randolph v. Lewis, Tex. Civ.App., 163 S.W. 647, affirmed by Com-

mission of Appeals, 210 S.W. 795, and 2 Tex.Jur. 88, sec. 46.

■ It appears from this record that appellees had for more than ten years peaceably used, enjoyed and occupied as a home all of the land within the enclosure, a part of it having been used for farming purposes, part of it for pasturage of their stock and for obtaining firewood and fence posts, each part being used for the purpose for which it was best adapted. We therefore believe the testimony fully supports the finding of the jury and we overrule appellant's first point.

■ Appellant complains in points 2 and 3 that the trial court erred in his failure to give to the jury appellant's specially requested instructions Nos. 1 and 2. Appellant's specially requested instruction No. 1 is as follows:

"You are instructed that where an adjoining owner or claimant in possession with a home or place of residence on another defined tract crosses, either through mistake or design, upon the adjoining tract and thereby subjects a possession of the adjoining survey to his use, which in its external manifestations is merely subsidiary and incidental to and thereby referable to the home or place of residence, such encroaching use is a matter of law insufficiently distinct to afford a basis for the acquisition under the statutes of limitation of more of the adjoining survey than is actually possessed and independently enclosed throughout the statutory period; and if you find from the evidence that there was no independent enclosure of the 18 acre tract in controversy, and that no part of same was cultivated or improvements placed thereon, then you should answer that there has been no adverse possession of said adjoining tract, unless you believe from the evidence that the pasturage of cattle upon said adjoining tract was sufficient to give notoriety to the world that said adjoining tract was claimed and used under a claim of right, distinct and hostile to the claim of all others."

Appellant's specially requested instruction No. 2 is as follows:

"You are hereby instructed as a part of the law of this case that the possession of a person entering a tract of land under a deed is presumptively in recognition of the title conferred by said deed and that the possession taken thereunder is co-extensive with the boundaries set out in said deed, and in order to find that the possession of land beyond the limits of said deed is under a claim of right, inconsistent with and hostile to the claim of another, you must find it of greater certainty and more positive evidence than in the instance where possession of the tract of land is taken by a naked trespasser."

Since appellant's specially requested instructions Nos. 1 and 2 are admitted by appellant to be of the same general nature and it argues them both together in its brief, we shall consider them together.

This is a straight trespass to try title suit with appellees defending on a plea of limitation. Appellees' deed of purchase of the property called for "80 acres of land known as the home place of Tony Havelott, deceased, and being the place upon which the said Tony Havelott resided for a number of years before his death." No other description was given of the property. The undisputed evidence shows that the tract of land was under fence on three sides and Adams Bayou serving as a complete barrier on the fourth side, making a complete enclosure when Tony Havelott used it as his home and when the place was sold to appellees on September 16, 1919, and occupied by appellees for about twenty years prior to the date of filing this suit; that during all of said time the 18 acre tract involved in this suit was within the said enclosure and was used as a part of the homestead of Tony Havelott until he died and by appellees from November 30, 1922, to the time of the filing of this suit by appellant on March 21, 1942; that appellees took possession of the entire tract of land under fence, including the 18 acres in question in this suit, claimed it all and used it all as heretofore stated during the entire time of occupancy. The record does not disclose whether the 18 acres in question is a part of the 80 acre tract originally purchased or is in excess of the 80 acres therein contained.

In submitting the case to the jury the trial court gave, in addition to the cautionary charges, the following instructions, to-wit:

"By the term 'peaceable possession,' as used in this charge is such as is continuous and not interrupted by adverse suit to recover the estate.

"By the term 'adverse possession,' as used in this charge is meant an actual and visible appropriation of the land, commenced and continued under a claim of

right inconsistent with and hostile to the claim of another.

"You are instructed that the use relied upon by one claiming land by limitation must be so open, visible, notorious, distinct and hostile as to raise the presumption of notice that the rights of the true owner are invaded intentionally and with the purpose of asserting a claim of title adverse to his, so patent that the owner could not be deceived and such that if he remains in ignorance thereof it is his own fault.

\* \* \* \* \* \* \*

"Now bearing in mind the foregoing definition and instruction you will consider the evidence, and upon such evidence answer the following Special Issues:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the defendants have been in peceable, adverse and continuous possession of the property in controversy, cultivating, using or enjoying the same for a period of ten years or more prior to the filing of this suit on the 21st day of March, 1942?

"Answer 'Yes' or 'No'."

The jury answered the one special issue in the affirmative.

It is our opinion that the trial court gave the necessary statutory definitions and instructions which safely guarded the rights of the parties and that, under the pleadings and evidence in the case, the trial court gave all the instructions necessary and properly refused appellant's specially requested instructions Nos. 1 and 2, and we therefore overrule appellant's second and third points.

Finding no reversible error, we affirm the judgment of the trial court.