**JEFFERIES v. BENAVIDES et al.**

No. 11916.

Court of Civil Appeals of Texas.
San Antonio.

March 3, 1949.

Rehearing Denied March 3, 1949.

Phelps & Phelps, Bismark Pope, Laredo, for appellant.

Earle S. Zucht, Gordon Gibson, Laredo, for appellees.

NORVELL, Justice.

This is an appeal from the judgment in trespass to try title rendered in favor of R. J. Benavides, Isidro Trevino and Jesus Trevino, plaintiffs below, and against the appellant, Fred Jefferies. The case was tried to a jury which found for appellees upon issues embracing the five and ten year statutes of limitation, Arts. 5509 and 5510, Vernon's Ann.Civ.Stats. A money judgment for $1,006.99 actual damages, and $500 exemplary damages, was also awarded because of the destruction of certain fences by appellant.

The judgment sets out by metes and bounds the tract of land in controversy,

which is situated in Webb County, Texas, and lies within the boundary lines of the Joaquin Galan Grant and also within the boundaries of Surveys Nos. 1017, 2222, 2223, 2224 and 2225. The surveys are junior to the grant and were made as a result of applications filed by Jose Garcia (Survey No. 1017), Alex Trimble (Survey No. 2222), Francisco Trevino (Survey (No. 2223), Luciano Trevino (Survey No. 2224), and Jose Trevino (Survey No. 2225).

Appellant presents nine points of error, but under our view of the case all points need not be discussed separately. The principal contention presented is that, as the original entries upon the surveys were made by persons who sought to obtain title from the State of Texas as pre-emptors, the possession of such persons and those claiming under them was not "adverse" within the meaning of that term as defined in Article 5515, Vernon's Ann.Civ.Stats. It is also contended that as appellees had accepted patents from the State of Texas to small portions of Surveys Nos. 1017, 2223, 2224 and 2225 in the year 1947 (lying south of the Galan Grant and not conflicting therewith), they were estopped to claim any other lands lying within said surveys. (Survey No. 2222 lies wholly within the Galan Grant.) Appellant also asserts that appellees' evidence relating to possession, use and enjoyment was insufficient as a matter of law to support the findings of the jury, inasmuch as such possession was not shown to be actual, visual and continuous. Articles 5514, 5515, Vernon's Ann.Civ.Stats.

We shall discuss this latter contention first. Appellant's points relating to this contention refer to paragraphs 5 and 6 of the motion for new trial, wherein it is asserted that the trial court erred in overruling certain objections to the charge of the court. The objection material here, asserted that there was no evidence to show a continuous, uninterrupted use of the land for the purpose for which it was adapted, for any five consecutive years or any ten years consecutively. This being a jury case, appellant's points are restricted to the assignments set forth in the motion for new trial. Rule 324, T.R.C.P. The question presented is one of law and essentially the same as that raised by the overruling of a motion for a peremptory instruction. In passing upon the question, we are required to view the evidence in the light most favorable to appellees, the prevailing parties in the court below.

The record discloses that Jose Trevino originally entered as a pre-emptor upon Survey No. 2225. He acquired Surveys Nos. 1017, 2222 and 2223 by conveyance, evidenced by warranty deeds, during the year 1897. He received a warranty deed to Survey No. 2224 in 1907. Appellant makes no distinction between or among the surveys involved, but contends that as to all surveys the evidence of the actual possession of Jose Trevino and those holding under him was insufficient as a matter of law.

Isidro Trevino, one of the parties to this action, testified that he was the son of Jose Trevino; that he was born on July 1, 1887, at the ranch house of the San Isidro Ranch; that this house was situated upon Survey No. 2225, and is still standing; that it is now his home; that he has resided there ever since he was born; that when his father purchased the other surveys here involved he immediately took possession of them and used the land for pasturing his animals and cows; that as far back as witness could remember, the San Isidro Ranch, comprising the surveys named as well as other lands, has been under fence, and that the Trevinos have been "living there; no one ever tried to put us off the land."

This witness also testified that his father, Don Jose Trevino, lived on the land until the time of his death; that thereafter his mother rented the land to tenants who used the same for the purpose of pasturing cattle, and that one of the tenants who leased the land for such purpose was the widow of H. H. Jefferies, the mother of appellant. Isidro Trevino also testified that after his mother's death her heirs leased the land to Fred Jefferies, the appellant in this case, and that appellant made no claim to any part of the San Isidro Ranch until the year 1948, when he tore down part of the San Isidro fences.

The witness Jose Dovalina testified that he was seventy years old; that he had lived in Webb County all his life and had worked

for H. H. Jefferies for about twenty years, beginning about 1908; that he was familiar with the Jefferies Ranch as well as the San Isidro owned by Jose Trevino; that during all these years the San Isidro was used for the pasturing of cattle by Jose Trevino, and after his death by the widow and her lessees; that during all the time the witness was acquainted with the land the San Isidro was in use, being first used by the owner, Jose Trevino, and then by Mr. Amidor Garcia and the Alexanders and others as lessees of Jose Trevino's widow. The witness further testified that it was the custom of ranchers to nail the wire on the side of the fences which they owned, and that the wires on the fences around the San Isidro were nailed on the Trevino side.

Dovalina also testified as to an occurrence which, in addition to having a bearing upon the points here under discussion, is deemed important with reference to the contention that the Trevino possession was not "adverse" to the Jefferies claim. The witness testified that many years ago Mr. H. H. Jefferies, father of appellant, attempted to construct a fence which would take in part of the lands then occupied by Don Jose Trevino. First, Mr. Jefferies cut a sendero and got as far as putting up the posts which were later removed. The witness did not know whether the matter was settled amicably or by court action. However, the Trevino fence remained in place, and the proposed Jefferies fence was abandoned. The witness was not definite as to the year of this occurrence, but, upon cross examination, estimated that it was during the early years of the present century.

Martin Gonzales testified that he worked for Mr. H. H. Jefferies about fifteen or twenty years, off and on, beginning about forty-one years ago; that during this time Jose Trevino was in possession of the San Isidro, and always had cattle upon the ranch; that after Don Jose's death his widow and sons had possession of the ranch.

It appears that the Trevinos and those holding under them have paid taxes on the lands involved in this suit for twenty-five out of the twenty-eight years between 1919 and the time of the trial below. For twenty-one of the twenty-five years the taxes were paid before they became delinquent. These payments were made upon lands described with reference to the surveys, but that part of the earth's surface involved can be located by the field notes of the surveys although the Galan Grant was not mentioned in the tax renditions or receipts. The record also indicates that the Trevinos executed a number of oil and gas leases and grazing leases covering the property. It appears from appellees' testimony that the lands involved were occupied by Don Jose Trevino and those claiming under him, for almost fifty years, and that the use and enjoyment thereof was that to which the land was adaptable. It was the customary use to which land was put during the times mentioned, by landowners in the southwestern section of the State.

■ We are of the opinion that it can not be said, as a matter of law, that the Trevino possession was not sufficiently open, visible and continuous to meet the requirements of the limitation statutes in these particulars. We overrule appellant's contentions in regard thereto.

From what has been said, it follows that the Trevino possession must be regarded as also adverse and hostile, unless appellant's first contention above mentioned be sustained, that is, the suggestion that as the original entries upon the surveys were made by pre-emptors, the subsequent possession thereunder can not be adverse. We next consider this assertion which, as above indicated, is the principal one relied upon by appellant for a reversal of the judgment.

It appears that Jose Garcia made application for Survey No. 1017 under the provisions of Chapter 67, Acts 1873, of the 13th Legislature, page 101, approved May 26, 1873, 7 Gammel's Laws of Texas 553. Applications for Survey No. 2222 (Alex Trimble), Survey No. 2223 (Francisco Trevino), Survey No. 2224 (Luciano Trevino), and Survey No. 2225 (Jose Trevino), were all made in accordance with the provisions of Article 14, § 6, of the Constitution of 1876, Vernon's Ann.St., and Chapter 9, Title 79, Articles 3937 to 3951, inclusive, of the 1879 Revised Civil Statutes relating

to homestead donations. The provisions of the Act of 1873 are similar to those included in the 1879 Revised Civil Statutes, in that it was provided that a person could acquire land from the State of Texas as a homestead donation by occupying a portion of the vacant and unappropriated domain. Three years' occupancy was required by both statutory provisions, and the statement of facts contains a copy of an affidavit executed by Jose Garcia in 1882, in which he states that he has occupied and improved Survey No. 1017, as a homestead for a period of three consecutive years, beginning on June 1, 1877. In 1886, Francisco Trevino applied for Survey No. 2223, and in 1891 Alex Trimble, Luciano Trevino and Jose Trevino applied for Surveys Nos. 2222, 2224 and 2225, respectively. All of these surveys were laid out on the ground and field notes prepared by the County Surveyor of Webb County.

It appears that the deeds received by Jose Trevino, as heretofore mentioned, were executed more than three years after the original application had been made upon all of the surveys herein involved. No patents were issued upon the lands in this suit, although in 1947 patents were secured for small portions of Surveys Nos. 1017, 2223, 2224 and 2225, lying south of and not in conflict with the Galan Grant.

It is well settled "that from actual possession of land evidenced by fences enclosing it a presumption arises that it is adversely claimed by the person in possession. * * * But the presumption, like other presumptions of fact, may be rebutted." McKee v. Stewart, 139 Tex. 260, 162 S.W.2d 948, 952, citing Hartman v. Huntington, 11 Tex.Civ.App. 130, 32 S.W. 562, hereinafter noticed.

Appellant seeks to rebut this presumption of adverse holding by showing that original entry on the land was made by pre-emptors. It would seem that a distinction might be made between Surveys Nos. 1017, 2222, 2223 and 2224, on one hand, and Survey No. 2225, on the other hand. As to the four surveys first mentioned, Jose Trevino held under warranty deeds, Trueheart v. Graham, Tex.Civ.App., 141 S.W. 281, and only Survey No. 2225 was claimed by him as a homestead donation.

It is stated in Texas Jurisprudence that the decisions are in conflict as to the adverse nature of the claim of one who takes possession of land under a belief that the title thereto is held by the State and with a view of acquiring the land under the homestead donation statutes. 2 Tex.Jur. 130, § 68.

The Supreme Court attempted to resolve this conflict in Smith v. Jones, 1910, 103 Tex. 632, 132 S.W. 469, 471, 31 L.R.A., N.S., 153, wherein the controlling proposition is stated as follows:

"Evidence showing no more than that a possession, relied on to sustain the defense of limitation, was taken and held under the mistaken belief that the land was public domain, with the purpose of acquiring it from the state by compliance with the law authorizing such acquisition at some time in future, is legally insufficient to show that such possession was hostile to anyone."

The Supreme Court, however, did not go to the extent of holding that "a possession must be adverse and hostile to the whole world in order to be so as to anyone." On the other hand, the doctrine of Smith v. Jones is not in absolute agreement with such cases as Converse v. Ringer, 6 Tex.Civ.App. 51, 24 S.W. 705; Longley v. Warren, 11 Tex.Civ.App. 269, 33 S.W. 304; and Price v. Eardley, 34 Tex.Civ.App. 60, 77 S.W. 416, which hold, in effect, that one in possession of land under a mistaken belief that it is vacant and holding adverse to the true owner may prescribe under the limitation statutes although the claim asserted is in recognition of the paramount title of the State, or, in other words, to quote from Converse v. Ringer [6 Tex.Civ.App. 51, 24 S.W. 707], "The recognition of the right of one does not involve the consequence of the recognition of the rights of all others."

The rule of Smith v. Jones, occupying as it does a middle position between two extremes, may present difficulties of application in particular situations. However, insofar as the facts of this particular

case are concerned, no uncertainty is en-countered, for the reason that Judge Williams, either in Smith v. Jones or in other opinions written by him, has, by illustration and description, made clear the application of the doctrine as applied to situations such as the one here presented.

In Smith v. Jones it is said, that,

"A possession acknowledging a better right in the state may be asserted by excluding, even by force, all other claimants and openly disputing their claims of title while the possessor is asserting and pursuing that which, if his assumption of title in the state were well founded, would be a legal right to acquire it. It could hardly be denied that a possession so maintained would in fact be adverse to the other claimants." .

In Hartman v. Huntington, 11 Tex.Civ. App. 130, 32 S.W. 562, 563, Judge Williams, then a member of the Galveston Court of Civil Appeals, said:

"A possession which, in its incipiency, does not appear to have been adverse, may acquire that character from the subsequent attitude or conduct of the possessor; and it may be that a possession taken only with the intent to pre-empt might be held so long, without effort to acquire the title under the law, as to afford sufficient evidence that such purpose had been abandoned, and an adverse claim set up for a sufficient time to give title."

. In Hoencke v. Lomax, 1909, 102 Tex. 487, 119 S.W. 842, the Supreme Court, in refusing an application for writ of error and speaking through Judge Williams, said: .

"In the opinion of the Court of Civil Appeals ([55 Tex.Civ.App. 189] 118 S.W. 817) it is said: 'It is now settled that one can acquire title to the land of another by limitation, notwithstanding the fact that at the time he takes possession he believes the land to be vacant public land and intends to acquire it from the State.' Other statements of the doctrine as broad as this may be found in opinions of the Courts of Civil Appeals, in which writs of error have been refused by this court. We take this occasion to say that, when a case shall be presented in which it becomes necessary to determine whether or not a possession is adverse to the true owner from its commencement, which is taken and held in the belief that the land belongs to the state and with the purpose to acquire it lawfully from the state, we shall not consider that question concluded. In all the cases which we now recall in which the question has been raised in applications for writs of error, it has been deemed immaterial, as it is in this case. Whatever may be the original character to be imputed to an entry of the kind referred to, the possession evidently may afterwards become adverse, as it did in this case, and in most cases that have come before the courts. If we had a case in which the period of limitation would have to be counted from the date of such an entry, the question would sharply arise, and we should not regard ourselves as precluded by previous action. We say this to avoid misconstruction of the refusal of the writ."

From the long continued possession exercised by the Trevinos, coupled with a history of non-claimer on the part of the Jefferies interests, it is difficult to arrive at any other conclusion than that the Trevino possession was maintained in the belief that title to the surveys involved had been obtained from the State and consequently such surveys were owned by the Trevinos. This view is directly supported by the testimony of Isidro Trevino. The evidence indicates that Don Jose Trevino was an uneducated man. He used a mark to sign legal instruments and it is not unreasonable to conclude that he believed that three years' possession and nothing more was sufficient to obtain title from the State, in accordance with the provisions of the law relating to homestead donations. It may be inferred from the evidence that although the original entries were made by pre-emptors, they and those holding under them did not continue to occupy the premises as such, but at some time in the early part of the century asserted an outright claim of ownership, rendering their possession adverse.

As pointed out in the case last cited, Hoencke v. Lomax, 102 Tex. 487, 119 S.W. 842, this situation appears to have been the usual one coming to the attention of

the Supreme Court in cases of this character.

There also is evidence which indicates that an assertion of title or interest to at least a part of the lands here involved was made by H. H. Jefferies, who claimed ownership of the south portion of the Galan Grant. This claim evidenced by the attempted construction of a fence was evidently successfully resisted by the Trevinos. The proposed Jefferies fence was not built and the lands remained within the Trevino boundary fences. This circumstance brings this case within the illustration contained in Smith v. Jones, supra. Jefferies was excluded from the lands claimed by Jose Trevino. Therefore, as to Jefferies and those claiming under him, the Trevino holding may be considered as adverse.

■ It is our considered opinion that the jury's finding that the Trevino possession was adverse has support in the evidence and appellant's contention with reference to this matter must be overruled.

As heretofore stated, the appellees in 1947 applied for and received patents from the State to small portions of Surveys Nos. 1017 (21.92 acres), 2223 (23.98 acres), 2224 (14.72 acres) and 2225 (19.65 acres). The lands covered by the patents lie south of and are not in conflict with the Galan Grant. No patent was issued on any part of Survey No. 2222, as said survey lies entirely within the boundaries of the Galan Grant.

Appellant contends that by accepting these patents the appellees are in the position of having received patents containing corrected field notes and are estopped to claim any lands outside the "corrected field notes" although said lands lie within the original field notes of the survey. Miller v. Yates, 122 Tex. 435, 61 S.W.2d 767.

■ We are unable to agree with appellant's contention. The claim of the appellees in this suit is against the appellant, the Galan Grant claimant, and is not against the State of Texas, nor is it based upon a patent issued by the State of Texas. Appellees are claiming under the real property limitation statutes Articles 5509 and 5510. The lands included in the 1947 patents are not included in this suit. The issuance of patents to the small portions of the surveys involved, not conflicting with the senior grant, could in no way estop appellees from asserting their claim based upon adverse user and possession against appellant as to those portions of the survey which were in conflict with the grant. The 1947 patents were not issued upon corrected surveys in accordance with the homestead donation laws of 1873 or 1879, but in accordance with the provisions of Acts 1931, 42d Leg. Reg. Session, Ch. 271, § 5, p. 452, Article 5421c, § 5, Vernon's Ann.Civ.Stats., which provides for the issuance of patents upon surveys which "cannot be patented under existing laws."

We overrule appellant's contention that appellees are estopped to assert a claim to the lands described in the judgment.

From what has been said, it follows that the judgment appealed from must be affirmed. It is unnecessary to discuss separately all of appellant's points of error. It appears that the jury findings have support in the evidence and appellees were entitled to recover title and possession to all the lands involved under the ten year statute Art. 5510. As to the five year statute, Art. 5509, a possible distinction might be made as to the lands included within Survey No. 2225, which was pre-empted by Jose Trevino. Appellant, however, does not urge that this survey stands upon a basis different from the others, insofar as the five-year statute is concerned. However that may be, we are convinced that none of appellant's points presents a reversible error. They are accordingly overruled and the judgment of the trial court is affirmed.