LONE STAR STEEL COMPANY, Appellant,

v.

Carl OWENS et al., Appellees.

No. 6912.

Court of Civil Appeals of Texas.

Texarkana.

March 7, 1957.

Rehearing Denied April 18, 1957.

———◆———

Buford, Ryburn, Hincks & Ford, Howard Jensen, Cooper Blankenship, Dallas, Mahlon L. Walters, Jefferson, for appellant.

J. R. Cornelius, Joe McCasland, Jefferson, for appellee.

CHADICK, Chief Justice.

This is a suit in trespass to try title for recovery of 60 acres of land in Marion County. After trial before a jury, judgment for plaintiffs was entered on favorable jury findings under the 5 and 10 year limitation statutes. For the reasons discussed, the judgment of the trial court is affirmed.

Appellant by proper points asserts that there was no evidence and insufficient evidence to support the jury's finding that one Gus Montgomery, the source of appellees' title, held adverse possession of the character required for either 5 or 10 years as the jury found. No complaint is made as to the form of issues or accuracy of instructions.

It is first insisted that limitation is defeated by Montgomery's testimony which appellant construes to mean that he went on the land for the purpose of "homesteading" it and that under such circumstances adverse possession does not meet the requirements of Articles 5509 and 5510, R.C.S., and 5 and 10 year statutes of limitation, and would be insufficient under the Supreme Court decision in the case of Smith v. Jones, 103 Tex. 632, 132 S.W. 469, 31 L.R.A.,N.S., 153.

Montgomery's testimony pointed out in support of this contention is as follows:

"Q. Now, Gus, when you moved on there what did you think, who did you think owned that land? A. Well, I thought it was just school land, in other words, vacant land.

"Q. Vacant land? A. Yes Sir.

"Q. And you went on there with the intention of homesteading it? A. Homesteading it.

"Q. Well, why did you go on there? A. I went on there thinking it was vacant land or school land and as I just said and I was getting out there to homestead it.

"Q. Now, Gus, you said you could homestead it, I will ask you whether or not you thought if you lived there it would become your land? A. Well, yes, sir, and of course after I lived there so long and figured that I had it homesteaded I saw Mr. Deaner, and—

"Q. Well, now I am not asking you about that now, I am asking you about you thought that you owned the place? A. Yes, sir.

"Q. And you thought that when you sold to Mr. Felker, didn't you? A. Yes, sir.

"Q. And state whether or not you understood and believed that if you lived there long enough you would acquire it by limitation? A. Yes, sir.

"Q. And was that your intentions? A. Yes, sir."

In addition, at other times while a witness, Montgomery also testified:

"Q. All right, now, Gus, during the time that you lived there did you claim this land as your own land? A. Yes, sir, I was claiming it all the time I was there.

"Q. And did you have any other home other than that, except you had an undivided interest up there in your father's estate? A. No, sir, I didn't have nary other home except this one.

"Q. And you claimed it was yours and you lived there on it and claimed it all this time? A. Yes, sir."

Besides the quoted testimony, Montgomery testified he went on the 60 acres about the year 1915, and built a small house on it. He claimed to have lived on the land continuously from that date, either in the small house or a larger one he said he later erected, until he tore the larger one down and moved it away in 1940. His testimony is that in the year 1917, he fenced the tract with a fence sufficient to turn livestock and kept the fences in good repair until he sold the land in 1953. He stated that he had about nine acres in cultivation each year from the year of his entry until 1944, and that he ran about 10 to 15 head of stock on the land at all times while living there and afterwards until he sold the land in 1953. Smith v. Jones, supra, is relied on so singularly by appellant that a comparison should be made of the entry described above by Montgomery and that of the Smiths in the referenced case. It is said at page 470 of 132 S.W.:

"* * * W. H. Smith bought 60 acres on his father's survey adjoining the land in suit, * * * and for about 15 years he maintained possession and use of the two tracts together as his home. Neither he nor C. C. Smith ever intended to take the property of any one else, or, as he expresses it, to steal the land or to make an appropriation of it fraudulently or dishonestly; but both believed it was vacant land, and intended to obtain it lawfully from the state as a homestead donation. He testified that he always claimed the land, but plainly this only meant that his claim was for the purpose and in the way stated; and when after 15 years, he became satisfied that he could not so acquire the land, he left it, removing all the houses by means of which he had held the possession."

Directly bearing on the disposition made in Smith v. Jones, Justice Williams said:

"* * * evidence showing no more than that a possession relied on to sustain the defense of limitation, was taken and held under the mistaken belief that the land was public domain, with the purpose of acquiring it from the state by compliance with the law authorizing such acquisition at some time in future, is legally insufficient to show that such possession was hostile to any one."

In the course of the opinion, the rule is limited by saying that the Supreme Court recognizes that holding possession subordinate to the State is not inconsistent with holding adversely to all others except the State and that an intention to hold adversely to all others will satisfy the statute; and that usually it is a question of fact; this limitation and explanation is illustrated by these extracts from the opinion:

"* * * It must be kept constantly in mind that, in applying a proposition like that, the facts of particular cases must be carefully regarded, and that additional facts may easily take the question, whether or not the evidences of possession and adverse claim were sufficiently certain and unequivocal to give notice to reasonably diligent owners, out of the province of the court and into that of the jury.

* * * * * *

"The difficulty with cases in which there is evidence of no further facts than those in this, as we view it, is that it is not made to appear that the possession was adverse and hostile to any one; for the mere holding of it under the belief that the land is the state's and with the purpose of acquiring it lawfully at some future time does not define the attitude of the possessor as hostile to the claim of an owner of whose existence he is ignorant. What is it that gives the adverse quality to a possession otherwise sufficient? The statute says it must be held under 'a claim of right inconsistent with and hostile to the claim of another.' And this plainly refers to a claim of the possessor, when he is holding only for himself. * * * It is true that, under the decisions, as we shall see, a 'claim' need not be an assertion of a right or title to the land in order to. satisfy the statute; but it is also true that evidence showing the assertion of right or title in the possessor, of itself, usually gives to the possession the necessary character of hostility to all others; and, where such evidence is wanting, the adverse quality must be inferred from other facts. Do the facts stated warrant such an inference here? 'Naked possession will secure title; * * * and the circumstances under which the possession is taken are altogether immaterial to the right, provided the occupant claims for himself and adversely to others. No matter how tortious or wrongful may be the seizure, if possession be continued for the time limited by statute, it will give title.' Charle v. Saffold, 13 Tex. [94] 112; Craig v. Cartwright, 65 Tex. [413] 423. And the possession having these characteristics is sufficient even if taken for the sole purpose of obtaining title by limitation. Craig v. Cartwright, 65 Tex. [413] 424. It is therefore true that a 'claim,' to satisfy the statute, may be only such as is involved in a mere maintenance of possession of, and the exercise of dominion over, the land, provided there be present the attitude of hostility and exclusiveness towards the true owner; but it is still true that the facts must give rise to the inference of a claim or an attitude of that character where there is no color of claim of title.

\* \* \* \* \* \*

"The refusal of writs of error in such cases has meant no more than that this court regarded the question, whether or not the possession involved was adverse and hostile to the title asserted by the plaintiff, as one of fact, where there were circumstances from which that quality could be inferred, and therefore felt bound by the findings of the courts below on that question, not regarding the belief under which the possession was taken that the land belonged to the state as necessarily decisive of the whole question."

The evidence shows that Gus Montgomery was a Negro man 66 years of age at the time of trial and that he was uneducated, living in a sparsely settled and relatively inaccessible area. It would be an unusual thing if such a man had a clear understanding or conception of what the lawyers or courts might refer to as "homesteading", "school land", "vacant lands", or "limitation." Inferences might be drawn from an absence of a showing that he had a substantially correct understanding of these terms, combined with his other testimony, which would lead to a conclusion that his intention when he made entry onto the land and took possession was to claim it against its true owner, whether the State or an individual.

There is no evidence that Montgomery meant to acquire the land by a compliance with any law regarding vacant land or that during his possession he made any effort to qualify in any way for a grant from the State, unless it be his physical occupancy thereof. He did not, as in Smith v. Jones,

manifest any belief that the State or any one else could oust him from possession or ownership and he entered into commercial transactions respecting it that evidenced an unqualified belief that he had title. That is, he executed warranty deeds and mineral leases on it. He stated in so many words that when he went into possession he meant to acquire title by "limitation", so if he should be considered to have understood and intended the correct legal meaning of the terms he used, this would be a direct assertion that he was claiming against the true owner, whoever it might be. The testimony needs construction to determine the character of his claim or intent on taking possession and such is peculiarly a part of the responsibility of the jury. His "claim" would be a matter of fact to be determined by a jury and not a matter of law for the court. The more recent case of Jefferies v. Benavides, Tex.Civ.App., 220 S.W.2d 712, wr. ref. NRE, supports this view.

In 1937–38, a grantee of appellant's predecessor in title cut and hauled timber from this tract according to several witnesses and there is also testimony that the same thing occurred around 1918. Witnesses to the 1937–38 transaction testified that Montgomery did not try to stop such acts or demand payment for the timber. On the basis of this evidence appellant contends there was and could be no adverse possession as this showed he made no claim inconsistent with and hostile to another and his acquiescence fails to indicate unmistakably a claim of exclusive ownership. Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925, is cited as being directly in point and in line with a number of other like decisions. Appellant then points to Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912, as sustaining its subsidiary contention that once limitation has been tolled there must be an abandonment and re-entry before a limitation period would again commence. Both propositions are undoubtedly correct, and would be sustained if the facts of this case brought it within the scope of these decisions.

■ However, for this purpose reference must again be made to Montgomery's and other witnesses' testimony. His testimony cannot be described as either straightforward or without self-contradiction, but it is in the record and was admissible and admitted before the jury. He denied that either in 1917 or 1937–38 loggers cut timber from this tract. With reference to 1917, he testified that the cutting was before that date, not saying when, or whether it was after he made entry, and somewhat inconclusively that the 1937–38 cutting was before 1940. Regarding this last logging operation the witness in charge of it at the time testified for appellant and stated that the logging was in the years 1937–38; and on cross-examination he said that no timber was cut from land within any enclosure. Montgomery, as previously noted, testified that he had the 60 acres enclosed by fence since the year 1917.

■ The testimony is contradictory and under such circumstances the court properly submitted the issues for determination of these facts by the jury. In answering the special issues the jury found Montgomery's adverse possession under the 10 year statute as being from 1922 to 1937, and under the 5 year statute as being between 1944 and 1949. The jury by their answers favored the Montgomery version which was within their province as exclusive judges of the facts proved, the credibility of the witnesses and the weight to be given the testimony.

■ During the trial it was shown that the fence around the tract of land entered upon by Montgomery actually enclosed 100 acres of which the 60 here involved is only a part; and on the basis of that factual situation it is asserted that grazing cattle on the entire uncultivated tract and cultivation of only 9 acres was not sufficient as a matter of law to mature a title under the limitation statutes because the pleading and proof did not identify the 9 acres claimed to have been cultivated or the 60 acres grazed while enclosed with the larger 100-

acre tract. Appellants support this contention on the authority of Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781; Marion County v. Sparks, Tex.Civ. App., 112 S.W.2d 798; Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912; Musgrove v. Foster Lumber Co., Tex.Civ.App., 89 S.W.2d 287.

In an earlier portion of this opinion it was alluded to that Montgomery fenced a tract which he described as containing about 60 acres and mention is made of his acts and claim of ownership relative to the tract. Other evidence is in the record that the fences described and the pasture used and cultivation made were on the entire tract enclosed by his fence. There is no evidence that Montgomery claimed only a part of the land he enclosed. So far as the record reveals, Montgomery was not aware that there was more than 60 acres in the entire tract until the time of the trial; and neither he nor his successors in title previous to trial claimed that the tract under his fence and which he had cultivated and grazed contained more than 60 acres. This information regarding the 40-acre excess apparently first came to them when appellant's surveyor testified.

These facts sufficiently distinguish this case from those relied upon by appellant mentioned next above. On the other hand, Houston Oil Co. of Texas v. Skeeler, Tex. Civ.App., 178 S.W.2d 740, wr. ref., N.R.E., and Ogletree v. Evans, Tex.Civ.App., 248 S.W.2d 804, seem to consider a factual situation more analagous to that found in this case, and control under the facts here. In the Houston case it is said [178 S.W.2d 741]:

"We do not understand it to be the rule that appellees must have had the 18 acres in question under a separate enclosure from their adjacent lands before they could acquire title thereto by peaceable, adverse and continuous possession under the ten-year statute of limitation. It seems to be the rule that a general enclosure including the 18 acres of land in question with other lands owned, used and occupied by appellees is sufficient if appellees had peaceable, adverse and continuous possession of same. Port City Co. v. Peck et ux., Tex.Civ.App., 42 S.W.2d 275; Moran v. Moseley et al., Tex.Civ. App., 164 S.W. 1093; Johnson v. Sullivan, Tex.Civ.App., 163 S.W. 1015; Randolph v. Lewis, Tex.Civ.App., 163 S.W. 647, affirmed by Tex.Com.App., 210 S.W. 795, and 2 Tex.Jur., 88, sec. 46."

In connection with the proof that the fenced tract actually contained 100 acres, appellees by counterpoint complain of the action of the trial court in refusing to permit them to file a trial amendment after the discrepancy was discovered, to the end that they might recover the 100 acres shown to have been fenced and claimed rather than the 60 acres described in their pleadings.

Rule 66, Texas Rules of Civil Procedure contemplates that trial amendments shall be freely made but the trial court is vested with a sound judicial discretion with regard thereto and something more than a request and refusal, which is all that is shown here, must appear before this Court may say that the trial judge abused his discretion.

The motion filed by appellees recites certain facts and conclusions, but it is not evidence that the matters asserted are true, and there is nothing observable in this record upon which this Court can determine whether the trial court did or did not have a basis for the exercise of his discretion. In the absence of a contrary showing, the court's action is presumed correct and must be sustained. A reading of the several cases listed under Rule 66, Vernon's Annotated Texas Rules under the note "Discretion" and "Abuse of Discretion" leads to the conclusion stated. In each of these cases facts are recited upon which abuse or want of abuse of discretion may be found.

The appellees after verdict but before judgment filed a motion under Rule 67, T.R.C.P., to amend their pleadings to conform to the issues which they contend were tried without objection. A look at the evidence warrants the belief that the trial judge properly refused that motion because the testimony could have given rise to inferences that are at variance with the jury's findings as to the 60 acres described and identified in the plaintiffs' pleading. As an instance of a source of such inferences which might have supported a finding against a recovery of 100 acres, Montgomery in his early testimony said:

"Q. Now, Gus, I will ask you whether or not that you sold a tract of land up there in the Walter Gilbert Survey to Mr. Bud Felker and Carl Owens in 1953? A. Yes, sir.

"Q. Is that the tract of land that is involved in this lawsuit as you understand it? A. Yes, sir.

"Q. How many acres is supposed to be in that tract? A. There is supposed to be about 60 acres."

Had the suit been to recover 100 acres, the jury could logically and theoretically have reached a conclusion different from the answers they did make. Perhaps appellant would have defended differently also, as it did use this discrepancy as an element of defense. It cannot be said that appellant by waiver agreed to try title to the entire 100 acres on the issues submitted.

The judgment of the trial court should be affirmed as the evidence supports the jury's finding on both the 5 and 10 year statutes of limitation and appellees' counterpoints do not show merit. Perhaps, out of caution, it is not amiss to say that no effort has been made to relate or summarize all evidence adduced on the trial, for example, a part of the testimony raising the 5 year limitation issue; however, consideration has been given to all of the evidence but mention is confined to that which appears pertinent to disposal of a question the parties briefed.

The judgment of the trial court is affirmed.

On Motion For Rehearing

In view of the motion for rehearing and the dissent, brief further notice will be given to the contentions of the appellant and the new matter discussed in the dissenting opinion.

The trial court clerk did not certify that the amount of the appeal bond in this case was in double the estimated cost of the appeal, nor that he approved the bond or its surety, but it was accepted for filing by him, regularly filed in his office and incorporated by him in the transcript of the record and certified to this court as a part of the record.

No objection of any character has been made or briefed by the appellees regarding form, sufficiency, or other feature of the appeal bond. It was timely filed with the clerk of the trial court, as noted in the dissent. After receipt of the transcript in this court, briefs of both parties were filed and judgment of the trial court affirmed. The bond now for the first time is mentioned.

Rule 404, Vernon's Ann.Tex.Rules of Civ.Proc. provides that in appeals to the Court of Civil Appeals any informality which may be waived, shall be considered as waived, if a motion complaining of the alleged irregularity is not made within 30 days after filing of the transcript. No motion making complaint has been filed. The Supreme Court in promulgating the Rules of Civil Procedure provides in the first Rule that they shall be given a liberal construction to the end that cases be disposed of on the basis of substantive law rather than on technical rules of procedure.

The Rule pertaining to cost bonds on appeal to the Court of Civil Appeals, 354, V.A.T.R., mentions sureties only incidentally by saying that a surety's ad-

dress shall be given. Otherwise it is silent. The matter of the sufficiency of the bond and its approval is committed to the prudence of the clerk, subject to supervision under certain circumstances by the Court of Civil Appeals. The clerk's duty is to estimate and fix the probable amount of cost, approve or refuse approval and file the bond. In the absence of a certificate of disapproval, the filing, which is the last of the duties placed upon the Clerk by the Rules, will imply that the preceding action has been taken. The familiar presumption that an officer has correctly performed his duty requires this view. It is not permissible or logical to presume that the clerk would file a bond, and incorporate it in the transcript, which he did not approve and fail to note his disapproval. The record here shows nothing to indicate a disapproval nor anything from which it might be inferred that the clerk did not do his duty. Chief Justice Oren Roberts of the Supreme Court, in 1876, in the case of Bridges v. Cundiff, 45 Tex. 437, a case with a strikingly factual similarity, said this:

"The bond, though not indorsed 'approved' by the clerk, appears from the transcript to have been filed in the cause, and sent up with the other papers, all of which are certified by the clerk to be a true copy of the proceedings, which sufficiently recognizes the approval of the clerk of the bond as a bond given for the costs in the writ of error. (McLane v. Russell, 29 Tex. [127], 128; Evans v. Pigg, 28 Tex. [586], 590)."

This case is distinguishable from Pinkston v. Victoria Bank & Trust Co., Tex. Civ.App., 210 S.W.2d 612, and Horton v. Stone, Tex.Civ.App., 268 S.W.2d 247, 249. In the Pinkston case, the clerk by his certificate expressly refused to approve the bond. The Horton case was disposed of on the following basis:

"But we have concluded that this Court does not have jurisdiction to dispose of the case upon its merits and that appellee's motion to dismiss the appeal for want of jurisdiction must be sustained, because it appears to us that appellants failed to present their original motion for new trial to the trial judge for action within 30 days after the same was filed, as required by Rule 330(j), T.R.C.P., and they failed to file an appeal bond within 30 days after their motion for new trial was overruled by operation of law, as required by Rule 356(a), T.R.C.P."

Though, later in the opinion mention is made of the failure of the clerk to approve the bond. Any informality connected with certification of the bond is waived.

In the original opinion an effort was made to outline the testimony of Gus. Montgomery as adverse claimant through whom the appellees claim title. This was done with a view of demonstrating that the several contentions made by the appellants related to questions of fact rather than of law.

Originally it was said, relative to appellant's contention that the evidence was insufficient as a matter of law to support a limitation title, that the facts in the case are more analogous to Houston Oil Co. of Texas v. Skeeler, Tex.Civ.App., 178 S.W.2d 740, wr. ref., N.R.E., than to authorities cited by the appellant. By such language it was meant that the Houston Oil Company case and those cited in connection with it were not necessarily in point on the facts, but on the whole the principles of law announced supported the result reached by this court. In Redman v. Cooper, Tex.Civ.App., 160 S.W.2d 318, 320, no writ history, the court had under consideration the alleged error of a trial court in rejecting testimony. In holding the rejected testimony admissible, the opinion expresses the rule of law applicable to the fact situation in this suit as follows:

"We so hold because we understand the rule to be that, if the plaintiff be

suing for a definite number of acres within his enclosure and the evidence introduced by him discloses that there are more acres within his enclosure than that sued for, this fact will not defeat his right to recover the land sued for, but that he will be permitted to recover only the amount sued for."

It should be borne in mind that Montgomery and other witnesses testified that Montgomery had the land involved enclosed by a wire fence. He calculated the enclosed area at 60 acres. The appellants calculated the same enclosure at 100 acres. The question between them in this respect is who is the more accurate in determining the quantity of the land in acres. Both were measuring the same fenced enclosure. However, under the record in this case, Montgomery or his successor in title can only recover the land described in the petition and deed located within the enclosure. This court is not aware of any case holding that a person must seek judgment for title to all land within an enclosure in order to have judgment for the part of it he describes in his pleading and proof, if he shows facts maturing title in him to the entire enclosed tract. This generalization is supported by Thompson v. Dutton, 96 Tex. 205, 71 S.W. 544; Williams v. Texas & N. O. Ry. Co., Tex.Civ.App., 114 S.W. 877, no writ history; O'Connor v. Presswood, Tex. Civ.App., 76 S.W.2d 799, no writ history.

Passing to the contention that cutting timber tolled the statute of limitation. A brief analysis of the cases upon which the appellant relies will show why they have no application in this case. Though repetitious, it is necessary to mention again that there is testimony in the record that the tract Montgomery claimed was enclosed by a fence, regardless of its acreage. In the light of that testimony the case of Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912, 913, is considered. The Waddell case deals with an unenclosed 100-acre tract of land on which the claimant fenced a garden

of about two acres, then under Article 5510, V.T.C.S. attempted to claim the remainder of the unenclosed tract. The court simply applied the well-settled rule to the facts of the case:

"The entry of the record owners through their vendee, Kirby Lumber Company, by cutting and removing the timber from this land restricted Waddell's use and possession to that actually enclosed by him. Waddell had no possession of that portion of the tract not under fence which would interfere with the constructive possession of the true owners, and when the true owners through their vendee, Kirby Lumber Company, entered the land and cut and removed the timber therefrom, the adverse possession, if any, of the Waddells, except as to the garden, ceased."

Obviously, if it be conceded that appellants by their vendee logged the tract, the facts here do not permit the application of this rule to Montgomery, because Montgomery continued in possession of the enclosed land.

■ Black v. Goolsbee, Tex.Civ.App., 226 S.W. 463, and Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925, 927, may also be distinguished on the facts. The Black case also deals with unenclosed land. Entry on the unenclosed land was made under authority of the true owner and was held to be sufficient to break the continuity of the possession of the adverse claimant. It is seen the facts are in no respect similar to those asserted to mature title in Montgomery. The Rick case concerned enclosed land but the determining factor in that case was the failure to prove possession hostile to the record owner under the evidence in the case. The opinion says "at most the evidence showed a claim by Grubbs to a right to use the land jointly with the record owner and those claiming under him." The opinion goes on to say that the Rick case does not overrule but expressly recognizes the authority of Cobb v. Robertson, 99 Tex.

138, 86 S.W. 746; Glover v. Pfeuffer, Tex. Civ.App., 163 S.W. 894, and Burroughs v. Smith, Tex.Civ.App., 8 S.W.2d 301. These last named cases deal with evidence that establishes the adverse character of the claimant's possession. The question in them was whether the continuity of the claimant's possession of enclosed land was broken by re-entries by the record owner or other persons not amounting to a complete ouster of the adverse claimant from possession of the land. In the Cobb case it is held [99 Tex. 138, 86 S.W. 749]:

"* * * We are not here speaking of the rule of the common law that a sufficient entry by the owner of premises adversely held operates of itself as an interruption of the statute of limitations in favor of the possessor, for that rule is changed by the statute which defines a peaceable possession as one which is 'continuous and not interrupted by adverse suit to recover the estate.' Speaking of this provision, in its effect upon a different question, this court, in Shields v. Boone, 22 Tex. 198, said: 'In the act of 20th of December, 1836, it was said, "a peaceable possession can only be interrupted by an actual suit being instituted and prosecuted agreeably to the due forms of law," etc. We do not think the Legislature intended to change the law'—meaning that no change from the law of 1836 was intended by the existing statute. From this it is evident that a possession which is continuous can only be interrupted by suit, and hence the necessity of plaintiffs showing, in order to sustain this contention, that they actually received the possession from Logan, so as to break its continuity."

No suit was filed as contemplated by the statute to oust Montgomery and the isolated cutting of timber, if it was in fact cut on the land claimed by Montgomery, sometime before 1918 and in 1938–1939, is not sufficient to oust Montgomery from possession particularly where there is testimony, if believed, that between and after those dates he had such possession and use of the land as would mature a limitation title.

▆ With respect to the appellees' counter-point complaining of the court's failure to permit appellees to file a trial amendment that complaint is no longer before this court. The original opinion held the matter not to be an abuse of discretion. The appellees have filed no motion for rehearing.

After re-examining the briefs and contentions of the parties and the authorities cited, the majority of the court feels the case was correctly decided and respectfully declines to recede from the original disposition.

The motion for rehearing is overruled.

FANNING, J., concurs.

DAVIS, J., dissents.

DAVIS, Justice (dissenting).

On a more careful examination of the record in this case on motion for rehearing, I find that the clerk of the trial court did not fix the probable amount of cost in this case; neither did such clerk approve the appeal bond. I seriously doubt that the appeal has been duly perfected, or that we have jurisdiction of the appeal. Pinkston v. Victoria Bank & Trust Co., Tex.Civ. App., 210 S.W.2d 612, no writ history; Horton v. Stone, Tex.Civ.App., 268 S.W.2d 247, no writ history. Although, there are authorities that seem to support the theory that where the bond was filed by the clerk within the time prescribed by law for filing appeal bonds, as was done in this case, it will be presumed that the clerk approved the bond. Bridges v. Cundiff, 45 Tex. 437,

Further a comment under Rule 430, V.A. T.R.C.P., we find the following:

> " 'The courts of this state have passed upon every requisite of an appeal bond as (set forth in the statute), and have held as to each of them that a bond deficient as to any one of them is sufficient to confer jurisdiction on the appellate court, and may be amended when objected to. (Citing cases.)' First State Bank & Trust Co. v. O. D. Mann & Sons, Tex.Civ.App.1919, 209 S.W. 683 (bond payable to appellant's codefendants rather than to appellee, as it should have been). Accord: Williams v. Wiley, 1902, 96 Tex. 148, 71 S.W. 12, where the bond was for 'all costs' in the suit rather than for an amount double the costs, and the court said: 'The bond shows on its face that it was filed as an attempt to comply with the statute in order to prosecute the writ of error, complies in most respects with the statute, and must be held sufficient, under the liberal provision quoted (now Rule 430), to give jurisdiction to the court, and to entitle plaintiffs in error to file a new one. It may, indeed, be seriously doubted whether or not, * * * it should longer be held that the jurisdiction of an appellate court at all depends on the giving of a bond.' "

I agree that liberal construction should be given to the Rules to entitle people to their day in court, but there must be some limitation on liberalism. It seems to me that the greater weight of presumption would be that a clerk did not intend to approve a bond where there is no certificate attached or order of approval. It also seems to me that the Rule should be more specific as to sureties and the provision relating to approval of the bond should be held to be mandatory. If the bond is sufficient, we have jurisdiction of the appeal. If it is not sufficient, and the Rule requires that it be approved within 30 days, we do not have jurisdiction of the appeal.

Further, I have concluded that we erred in affirming the judgment of the trial court in at least two, if not three, respects.

First, appellees sued for 60 acres of land. The evidence shows that there was 100 acres of land within the enclosure. If the pleadings are sufficient to recover only 60 acres of land (provided the 60 acres were actually enclosed within a fence, or enclosed within a fence along with other lands owned, used and occupied by appellees), then they are not sufficient to recover the entire 100 acres, because there is no allegation of ownership of the other 40 acres. The evidence shows that Montgomery used the entire tract, but he can not recover more than he sued for. I don't think the case of Houston Oil Co. of Texas v. Skeeler, Tex.Civ.App., 178 S.W.2d 740, 741, cited in the original opinion, is authority for the holding in the original opinion. As a matter of fact, it is a holding to the contrary because to establish title to real property by limitation under the five and ten years statutes of limitation it must be shown that the land is completely enclosed within a fence within itself; or, "with other lands owned, used and occupied by [the claimants]."

Second, I think the trial court abused his discretion in refusing the appellees permission to file their trial amendment wherein they sought to plead title to the entire 100 acres. Appellants defended on the ground that there was 100 acres within the enclosure and established such fact by expert testimony without pleading such fact as an affirmative defense in the case. No question could arise but that they knew of these facts long before the trial and the case was tried with at least the implied consent that the appellees and their predecessors in title had been occupying, using and claiming all the land within the enclosure. Therefore, appellants could not have pleaded surprise. In a number of

cases cited under Note 13, of Rule 67, V. A.T.R.C.P., the courts have consistently held that permitting the filing of a trial amendment in such cases by trial judges was not an abuse of discretion. Thus, it seems to me, the failure to permit such trial amendment under such circumstances would and should constitute a clear abuse of discretion. This court held such refusal to constitute an abuse of discretion in the case of Shaw v. Tyler Bank & Trust Co., Tex.Civ.App., 285 S.W.2d 782, wr. ref. N.R.E.

Third, I think Montgomery, even though he contradicted some of his own testimony, admitted the cutting of timber off this land after he entered upon it, even as late as 1938 or 1939. There was no abandonment nor re-entry. The fact that one of the parties who cut the timber at the latter stage said he did not cut any from an enclosure indicates to me that the fence had not been kept up as contended by the appellees. A careful study of Montgomery's testimony clearly shows that timber was cut as late as 1938 or 1939, and that he made no objection whatever to such cutting and removing of the timber. Black v. Goolsbee, Tex.Civ.App., 226 S.W. 463, wr. dism.; and Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912.

I also doubt the sufficiency of the testimony of Montgomery to show an intent to claim the land against the rightful owner. He entered upon it upon the belief that the land was vacant school land with the intention to "homestead" the same. Subsequently, he made no protest to the cutting of the timber; therefore, it seems to me that it was his intention to acquire title to the property by occupancy against a governmental agency and did not protest the ownership of the rightful owners. Smith v. Jones, 103 Tex. 632, 132 S.W. 469, 31 L.R.A.,N.S., 153.

I think the appellants' motion for rehearing should be granted, the judgment of the trial court reversed and the cause remanded.